UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

FAREPORTAL, INC. D/B/A CHEAPOAIR,

                                                08 CIV

                  Plaintiff,

        -against-

OPINION CORP. D/B/A PISSEDCONSUMER,

                 Defendant.
-------------------------------------------------------------------x

# Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction

Respectfully submitted,

_____

Tedd Kessler (TK-2967)
**THE LAW OFFICE OF TEDD KESSLER, P.C.**
ATTORNEYS FOR PLAINTIFF
302 Fifth Avenue
8th Floor
New York, New York 10001
(212) 477-3200

i

## *TABLE OF CONTENTS*

TABLE OF AUTHORITIES .................................................................iv

PRELIMINARY STATEMENT ........................................................ 1

THE FACTS ................................................................................ 1

ARGUMENT ............................................................................... 7

    Burden of Proof for a Preliminary Injunction ............................... 7

POINT I.................................................................................... 8

THE LANHAM ACT CLAIMS

THE PISSEDCONSUMER.COM WEBSITE CAUSES PLAINTIFF CHEAPOAIR
IRREPARABLE HARM ............................................................... 8

    A.  Irreparable Harm............................................................... 8

    B.  Likelihood of Success on the Trademark Infringement Claim ............. 10

        1.  The Strength of Cheapoair's Mark ............................... 11

        2.  Commercial Use................................................... 13

        3.  Likelihood of Confusion........................................... 16

            a. The Polaroid Factors......................................... 17

                i.    The Strenght of the Mark.............................. 18

                ii.   The Degree of Similarity Between the Marks .................. 18

                iii. The Competitive Proximity of the Products and Services ... 20

                iv. The Likelihood that Plaintiff will Bridge the Gap
Between the Marks ......................................................... 20

                v.   The Existence of Actual Confusion................................. 20

                vi.  The Defendants' Good Faith in Adopting the Mark .......... 21

                vii. The Quality of Defendants' Product ............................. 22

                viii. The Sophistication of the Purchasers............................ 22

    C.  Initial Interest Confusion................................................. 23

    D.  Dilution under §43(c) .................................................... 27

    E.  Anticybersquatting Consumer Protection Act 15 U.S.C. 1125(d) ........ 30

**POINT II**..................................................................................... 33

UNDER GBL §360-L, PLAINTIFF CHEAPOAIR IS ENTITLTED TO

AN

INJUCTION...........................................................................................

...........33

**CONCLUSION**............................................................................... 34

## TABLE OF AUTHORITIES

Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2dCir.1976)....................................................................................pg 11

*ACLU v. Reno,* 31 F.Supp.2d 473, 484 (E.D.Pa.1999)..........................................
      pg. 2

*Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 n.1 (2d Cir. 1997)........      pg 1

BigStar Entertainment, Inc. v. Next Big Star, Inc., 105 F.Supp.2d 185, 205S.D.N.Y.,2000...........................................................................      pg 19, 24

Bihari v. Gross, 119 F.Supp. 2d 309, 312...............      pg 2, 8, 13, 18, 24, 25, 27

Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1039 (2d Cir.1992).................................................................................................
..........pg. 13

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036, 1063-64 (9th Cir.1999).......................................................pg. 3, 18, 23, 26, 27

Centaur Communications, Ltd., 830 F.2d at 1226.............................................pg. 19

C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc., 753 F.2d 14, 18 (2d Cir.1985)..................................................................................................
pg. 19

Clinique Labs., Inc. v. Dep Corp., 945 F.Supp. 547, 561 (S.D.N.Y.1996).....pg. 29

*Columbia Univ. v. Columbia/HCA Healthcare Corp.,* 964 F. Supp. 733, 743 (S.D.N.Y. 1997)...................................................................................................pg. 21

*Deere & Co. v. MTD Prods., Inc.,* 41 F.3d 39, 43 (2d Cir.1994)................. pg. 30

Estee Lauder Inc. v. The Gap, Inc., 108 F.3d 1503, 1508-09 (2d Cir.1997) pg. 10, 12

Forschner Group, Inc. v. Arrow Trading Co., 124 F.3d 402, 407 (2d Cir.1997).pg 7, 11

iv

Franchised Stores of New York. Inc. v. Winter, 394 F.2d 664, 669 (2d Cir.1968)  pg. 16

Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 143 (2d Cir.1997). pg. 11

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons,* 523 F.2d 1331 (2d Cir.1975)... pg 24

*Hard Rock Cafe Int'l (USA) Inc. v. Morton,* 1999 WL 717995,*32 n.29 (S.D.N.Y.) pg. 33

Intermatic v. Toeppen, 947 F.Supp. 1227, 1239 (N.D.Ill.1996).....................pg 2, 6

*Jews For Jesus,* 993 F.Supp. at 290 pg. 18

*Lane Capital Mgmt.,* 15 F. Supp. 2d at 393. pg. 4

Maryland Cas. Co. v. Realty Advisory Board on Labor Relations, 107 F.3d 979, 984 (2d Cir.1997) pg. 7

MGM-Pathe Communications Co. v. Pink Panther Patrol, 774 F.Supp. 869, 876 S.D.N.Y.,1991.......................................... pg 22

*Mobil Oil Corp.,* 818 F.2d 254; ................................................................. pg. 17, 24

Nabisco, 191 F.3d at 217-221 ......................................................Pg. 28, 30 .

*New York State Soc'y of Certified Pub. Accountants v. Eric Louis Associates, Inc.,* 79 F.Supp.2d 331, 356, n. 5 (S.D.N.Y.1999),.................................pg. 18, 21, 24, 30, 34

Niton Corp. v. Radiation Monitoring Devices, Inc., 27 F.Supp.2d 102 (D.Mass.1998) ...................................................................................................pg. 2, 3, 25

Paddington Corp. v. Attiki Importers & Distributors, Inc., 996 F.2d 577, 586 (2d Cir.1993)  pg 21

Planned Parenthood Federation of America, Inc. v. Bucci, . 97 Civ. 0629, 1997 WL 133313(S.D.N.Y March 24, 1997) aff'd, 152 F.3d. 920 (2d Cir. 1998), cert denied, 525 U.S. 834, 119 S.Ct. 90, 142L.Ed.2d 71(1998)............................... pg 15, 18, 20, 21

Playboy Enters., Inc. v. Asiafocus Int'l, Inc., No. Civ. A. 97-734-A, 1998 WL 724000, at *3,**6-7................................................................................................................. pg 25

Playboy Enters., Inc. v. Calvin Designer Label, 985 F.Supp. 1220, 1221 (N.D.Cal.1997)
..............................................................................................................................................
..............pg 26

Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir.1961)................pg
17

Ringling Brothers-Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp., 937
F.Supp. 204, 207
(S.D.N.Y.1996)....................................................................................................pg 7

Rogers v. Grimaldi, 875 F.2d 994, 999 (2d Cir.1989).
.............................................. pg. 34

Shea v. Reno, 930 F.Supp. 916, 929 (S.D.N.Y.1996),
...................................................pg 2

SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc., 211 F.3d 21,
24 (2d
Cir.2000);.........................................................................................................................
pg 7

Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955, 966 (2d Cir.1996)....pg
29

Standard & Poor's Corp. v. Commodity Exchange, Inc., 683 F.2d 704, 708 (2d Cir.1982)
..............................................................................................................................................
......................pg 8

Steele v. Bulova Watch Co., 344 U.S. 280, 283, 73 S.Ct. 252, 97 L.Ed. 319 (1952)
..............................................................................................................................................
......................pg 15

Tom Doherty Assocs. v. Saban Entertainment, Inc., 60 F.3d 27, 37 (2d Cir.1995)...pg. 8

Tough Traveler, Ltd. v. Outbound Products, 60 F.3d 964, 967 (2d Cir.1995).............pg
8

Two Pesos, 505 U.S. at 768, 112 S.Ct.
2753...........................................................pg 11, 12

Washington Speakers Bureau, Inc. v. Leading Authorities, Inc., 33 F.Supp.2d 488, 499
(E.D.Va.1999)..................................................................................................................
.................... pg 2

*West & Co., Inc. v. West & Co., Inc.,* 557 F.2d 338 340 (2d Cir. 1977).................pg 4

Yankee Pub. Inc. v. News America Pub. Inc., 809 F.Supp. 267  (S.D.N.Y.,1992)...pg 34

**Statutes**

15 U.S.C. §1051
.............................................................................................pg 12

15 U.S.C. §1052
.............................................................................................pg 11

15 U.S.C. §1114................................................................ pg 3

15 U.S.C. §1114(1)(a), ..................................................... pg 1

15 U.S.C. §1125(a), ..........................................................pg 13

15 U.S.C. §1125(a)(1)(A), ................................................ pg 10

15 U.S.C. §1125(a)(1)(B). ................................................ pg 15

15 U.S.C. §1125(c) .........................................................pg 13, 14, 15

115 U.S.C. §1125(c)(4)(B) ................................................ pg 15

15 U.S.C. §1125(d) ................................................... pg 14, 31

15 U.S.C. § 1125(d)(1) ...................................................pg 1, 14

15 U.S.C. § 1127 pg....................................................... pg 3

McKinney's New York General Business Law §306-l............................pg 3

## *PRELIMINARY STATEMENT*

Plaintiff FAREPORTAL, INC. D/B/A CHEAPOAIR (referred to as "Cheapoair" or "cheapoair") moves to preliminarily enjoin defendant OPINION CORP. D/B/A PISSEDCONSUMER.COM (referred to as "Pissedconsumer" or "pissedconsumer") from using the name Cheapoair in the domain names or metatags of any of its websites, claiming that such use violates 15 U.S.C. §1114(1)(a), 1125(a)(1)(A) and (B), 15 U.S.C. §1125(c) and 15 U.S.C. § 1125(d)(1) known as the Anticybersquatting Consumer Protection Act, New York General Business Law §306-1 and New York State Unfair Competition Law. Pissedconsumer has caused confusion regarding Cheapoair's mark and the dilution of its distinctive quality. A preliminary injunction is necessary to preserve and prevent the destruction of Cheapoair's business, reputation and goodwill.

## *THE FACTS*

Plaintiff Fareportal, Inc. is a New York corporation doing business in New York County as Cheapoair. (See, affidavit of Harsh Sood, exhibit "A", ¶5). The business of Cheapoair is to provide low-cost travel arrangements through the Internet. (Declaration of Harsh Sood, ¶9).    The    Cheapoair    website    is www.cheapoair.com.

Defendant Opinion Corp. does business as pissedconsumer.com and maintains websites which allows viewers the opportunity to find vendors through the use of hyperlinks[1] and to post comments and remarks about various companies

---

[1] A "hyperlink" is a "highlighted text or image that, when selected by the user, permit[s] him [or her] to view another, related, Internet document." *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 n.1 (2d Cir. 1997)

including Cheapoair.

Pissedconsumer uses cheapoair in its URL addresses and in its metatags. Metatags appear in HTML code and permit web designers to describe a webpage. There are two different types of metatags, keyword and description. A keyword metatag permits the designer to identify search terms which would be picked up by search engines. Description metatags allow web designers to briefly describe the contents of their pages. Description metatags, too, are found by search engines. Description metatags appear as sentence fragments beneath the webpage's listing in a search result. Bihari v. Gross, 119 F.Supp. 2d 309, 312.

To find a particular website, someone can type the actual URL address or use a search engine.

> "A Web surfer's second option when he does not know the domain name is to utilize an Internet search engine, such as Yahoo, Altavista, or Lycos. *See ACLU v. Reno,* 31 F.Supp.2d 473, 484 (E.D.Pa.1999); *Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.,* 33 F.Supp.2d 488, 499 (E.D.Va.1999). When a keyword is entered, the search engine processes it through a self-created index of web sites to generate a (sometimes long) list relating to the entered keyword. Each search engine uses its own algorithm to arrange indexed materials in sequence, so the list of web sites that any particular set of keywords will bring up may differ depending on the search engine used. *See Niton Corp. v. Radiation Monitoring Devices, Inc.,* 27 F.Supp.2d 102, 104 (D.Mass.1998); *Intermatic Inc. v. Toeppen,* 947 F.Supp. 1227, 1231-32 (N.D.Ill.1996); *Shea v. Reno,* 930 F.Supp. 916, 929 (S.D.N.Y.1996), *aff'd,* 521 U.S. 1113, 117 S.Ct. 2501, 138 L.Ed.2d 1006 (1997). Search engines look for keywords in places such as domain names, actual text on the web page, and metatags. Metatags are HTML code intended to describe the contents of the web site. There are different types of

2

metatags, but those of principal concern to us are the "description" and "keyword" metatags. The description metatags are intended to describe the web site; the keyword metatags, at least in theory, contain keywords relating to the contents of the web site. The more often a term appears in the metatags and in the text of the web page, the more likely it is that the web page will be "hit" in a search for that keyword and the higher on the list of "hits" the web page will appear. *See Niton,* 27 F.Supp.2d at 104."

Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1045 (9th Cir.,1999).

The declaration of Ilya Zherebetskiy, an HTML code specialist, states, *inter alia*, "that In relation to the cheapoair.com.pissedconsumer.com and cheapoair.pissedconsumer.com websites, pissedconsumer uses Cheapoair as both a description and keyword meta tag to describe their webpage. Therefore, when a search engine is searching for Cheapoair, these two websites are found and due to the use of the Cheapoair trademark, come up" (See, declaration of Zherebetskiy, ¶ 10).

He states that when a search engine checks the pissedconsumer.com website, it sees the following description metatag:

"<meta name="description" content="Cheapoair, the company that brings offers of a huge selection of cheap plane tickets, airline tickets and cheapest airfares" />"

See, Zherebetskiy declaration, ¶ 7.

It and sees the following keyword metatags:

"<meta name="keywords" content="Cheapoair, Discount airfares, Cheap Plane Fares, Cheap Air Tickets, Cheap Hotels and Car Rentals with Cheap Flights Europe, Asia, USA" />"

3

See, Zherebetskiy declaration, ¶ 8.

The search engine finds the Cheapoair description and keyword metatags. See, Zherebetskiy declaration, ¶ 10.

When a search engine is searching for Cheapoair, cheapoair.com.pissedconsumer.com and cheapoair.pissedconsumer.comwebsites are found and due to the use of the Cheapoair trademark, come up prominently in the first few webpages listed by the search engine. See, Zherebetskiy declaration, ¶10. When someone searches for Cheapoair, the search engine comes up with the pissedconsumer websites as if it were Cheapoair See, Zherebetskiy declaration, ¶13.

Cheapoair is a service mark which has been in continuous use since 2005. Fareportal Inc. registered for trademark the name "cheapOair.com the only way to go!!" on or about March 6, 2008[2]. Sood declaration ¶¶7-8.

When cheapoair is typed into a search engine such as Google, **Cheapoair @ Pissed Consumer** is one of the first hypertext results enabling the searcher to access its webpage (emphasis in original). The text underneath **Cheapoair @ Pissed Consumer** reads, "**Cheapoair,** the company that brings you a huge selection of cheap plane tickets, airline tickets and cheapest airfares." (Emphasis in original). The URL "cheapoair.pissedconsumer.com" appears. A printout of the Google

---

[2] Service marks are essentially trademarks that are used in the sale of services instead of good. Trademarks and service marks are governed by identical standards. *See, e.g., West & Co., Inc. v. West & Co., Inc.,* 557 F.2d 338 340 (2d Cir. 1977). Service marks are defined as "any word, name, symbol, or device, or any combination thereof" used to "identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." 15 U.S.C. § 1127; *See also Lane Capital Mgmt.,* 15 F. Supp. 2d at 393.

4

search for Cheapoair is attached hereto as exhibit "A". Above URL address the description states, "[b]ook cheap international flights on **cheapoAir**.com...". (Emphasis in original).

The first two (2) links which are the very first results of the search for Cheapoair are cheapoair.com and delta.com. Cheapoair and Delta pay to be exhibited at these locations on particular searches. Two links below the pay locations is the cheapoair.pissedconsumer.com site link. Clicking on that link will bring a viewer to the cheapoair.pissedconsumer.com site. (The ranking of the non-pay sites can change at any time).

Pissedconsumer has two (2) URL addresses that use the Cheapoair mark. The first is cheapoair.pissedconsumer.com. The second URL is even more misleading, cheapoair.com.pissedconsumer.com as it uses the Cheapoair domain, cheapoair.com, in its URL. Attached hereto as exhibit "B" is the homepage for cheapoair.pissedconsumer.com and attach hereto as exhibit "C" is the homepage for cheapoair.com.pissedconsumer.com.

When someone views the cheapoair.pissedconsumer.com website they arrive at a website that provides an illuminating paragraph on the business of Cheapoair. This edification, in the center of the web page, also happens to contain hyperlinks which direct consumers to competitors of Cheapoair. See, exhibit "B".

Plaintiff alleges that confusion is created in a number of ways. Initially, confusion is caused when the viewer sees cheapoair in the pissedconsumer URL addresses. Additionally, confusion is caused when the viewer sees the major

feature of the first page of the website. The major feature of this website is the paragraph on the business of Cheapoair. Last week, cheapoair.pissedconsumer.com and the cheapoair.com.pissedconsumer.com websites were identical. Attached hereto as exhibit "B" is the printout from the cheapoair.pissedconsumer.com website which shows he will meet me in it you did he the aforementioned hyperlink connections which direct consumers to competitors of Cheapoair.

Additional confusion is caused when a viewer clicks on one of the links in this section because a reasonable viewer would assume that he/she was being taken to a website of cheapoair or one of its affiliates when of viewer will actually be brought to a competitor of Cheapoair.

Cheapoair first learned of the cheapoair.pissedconsumer.com and cheapoair.com.pissedconsumer.com websites on or about May 25, 2008 (Sood declaration, ¶10). The business of Cheapoair has been affected by this website. See, Sood declaration, ¶14.

Cheapoair has filed for trademark/service mark registration "cheapOair.com the only way to go!!" Sood declaration, ¶8. The cheapoair mark has been in continuous use since 2006. Sood declaration, ¶7. It is a suggestive and fanciful mark as it suggests the features of its service and is an invented mark. No permission was ever given to pissedconsumer to use the named cheapoair in its URL addresses or meta tags. Sood declaration, ¶12.

6

Attached hereto as exhibit "D" is a copy of the application for trademark registration dated March 6, 2008 with notification of application receipt. Registration is not a prerequisite to protection under §43(a) of the Lanham Act. Forschner Group, Inc. v. Arrow Trading Co., 124 F.3d 402, 407 (2d Cir.1997).

Cheapoair has maintained its website since 2006. Sood declaration, ¶7. It has been in the same business, providing inexpensive travel needs and arrangements, since 2006. Sood declaration, ¶9.

Pissedconsumer.com's use of cheapoair's mark causes consumer confusion especially since both websites are vying for the same customer.

### ARGUMENT

Burden Of Proof For a Preliminary Injunction

"Because of the great potential for harm which may occur from the issuance of a preliminary injunction, the party seeking the injunction must sustain a heavy burden." Ringling Brothers-Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp., 937 F.Supp. 204, 207 (S.D.N.Y.1996). The party seeking such relief must demonstrate: (1) likelihood of irreparable harm should the injunction be denied; and (2) either (a) likelihood of ultimate success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking relief. SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc., 211 F.3d 21, 24 (2d Cir.2000); Maryland Cas. Co. v. Realty Advisory Board on Labor Relations, 107 F.3d 979, 984 (2d Cir.1997)

## POINT I

### The Lanham Act Claims

## THE PISSEDCONSUMER.COM WEB SITE
## CAUSES PLAINTIFF CHEAPOAIR IRREPARABLE HARM

**A.    Irreparable Harm**

"Irreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." Tom Doherty Assocs. v. Saban Entertainment, Inc., 60 F.3d 27, 37 (2d Cir.1995)

In a trademark infringement case, a presumption of irreparable harm arises where a plaintiff makes a showing of likelihood of confusion. Tough Traveler, Ltd. v. Outbound Products, 60 F.3d 964, 967 (2d Cir.1995) ; Standard & Poor's Corp. v. Commodity Exchange, Inc., 683 F.2d 704, 708 (2d Cir.1982). A showing of likelihood of confusion establishes the irreparable harm requisite for a preliminary injunction. Bihari v. Gross, 119 F.Supp.2d 309, 316 (S.D.N.Y.2000).

Cheapoair can demonstrate irreparable harm as a likelihood of confusion exists because,

1)    the          cheapoair.pissedconsumer.com          and cheapoair.com.pissedconsumer.com websites use the Cheapoair domain name and Cheapoair metatags to bring its webpage to the forefront of search engine results, and,

2)    when    arriving    at    the    cheapoair.pissedconsumer.com    and cheapoair.com.pissedconsumer.com websites, the most prominent feature of the

8

page attracts the viewer immediately to a description of the business of Cheapoair, which contains hyperlinks to cheapoair's competitors.

In both of the above cases, it is submitted, that a reasonable viewer would believe he/she was at the Cheapoair website.

The cheapoair.pissedconsumer.com and cheapoair.com.pissedconsumer.com websites cause confusion because the viewer believes that clicking on a hypertext with cheapoair in the domain, and the first part of the domain at that, would bring them to a Cheapoair website.

Upon arrival at the cheapoair.pissedconsumer.com or the cheapoair.com.pissedconsumer.com website, in the middle of the page appears an explanation of the business of Cheapoair (exhibit B") which reads as follows,

"Cheapoair
Cheapoair.com is a website that brings airfares, hotels, car rentals and vacationa (sic) packages information from numerous sources. The company offers a huge selection of cheap plane tickets, airline tickets and cheapest airfares. With the help of Cheapoair it is very easy to book the tickets online and to plan a vacation. Cheapoair provides business class fares, first class fares, a number of different top deals, weekend getaways, seasonal travel tickets, tickets for international flights, for Europe flights, Caribbean flights, Mexico flights, domestic flights, Canada flights,                  and                  so                  much                  more.

In addition, Cheapoair offers different travel resources, travel tips, it provides airline codes, news, travel glossary and many other things available on Cheapoair.com."

Hyperlinks are present at the words "car rentals", "cheap plane tickets", "plan a vacation", "international flights" and "flights".  When any of these hyperlinks are clicked, the viewer is not taken to a website of Cheapoair or its affiliates.  Instead, these links take the viewer to websites which are its

competitors.    See, exhibit "E" which consists of printouts which show the hyperlinks when the cursor is on the hyperlink.

The cheapoair.pissedconsumer.com and cheapoair.com.pissedconsumer.com websites are commercial in nature. Pissedconsumer clearly intends to profit from the use of the Cheapoair name and trademark.    The hyperlinks cited and the various advertisements appear on the cheapoair.pissedconsumer.com and cheapoair.com.pissedconsumer.com homepage generate revenue for the pissedconsumer website.

The confusion created has resulted in a decrease in sales for Cheapoair. Sood declaration, ¶14.

**B.    Likelihood of Success on the Trademark Infringement Claim**

A claim of trademark infringement under §43(a) of the Lanham Act requires the plaintiff to show (1) that it has a valid mark that is entitled to protection under the Lanham Act, and (2) that use of that mark by another "is likely to cause confusion ... as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by another person." 1125(a)(1)(A); Estee Lauder Inc. v. The Gap, Inc., 108 F.3d 1503, 1508-09 (2d Cir.1997).

Through the use of the cheapoair mark in its meta tags and its use in the URL          addresses,          cheapoair.pissedconsumer.com          and cheapoair.com.pissedconsumer.com, confusion is caused since the initial part of these addresses indicate to the viewer he or she is at a Cheapoair website when

this is not true.

The illuminating paragraph about the business of Cheapoair (exhibit "B") which appears in the middle of the cheapoair.pissedconsumer.com and cheapoair.com.pissedconsumer.com website provides hyperlinks which take the consumer to competitors of Cheapoair. A reasonable viewer would assume that he/she was being taken to a Cheapoair website page.

**1.    The Strength of Cheapoair's Mark**

Cheapoair has filed for trademark registration "cheapOair.com the only way to go!!" Exhibit "D". Registration is not a prerequisite to protection under §43(a) of the Lanham Act.

To be valid and protectable, a mark must be capable of distinguishing the products it marks from those of others. Two Pesos, 505 U.S. at 768, 112 S.Ct. 2753 (citing 15 U.S.C. § 1052).

There are five different categories of terms with respect to the protection of a mark: generic, descriptive, suggestive, arbitrary, and fanciful. Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir.1976) .

A mark is generic if it is a common description of products and refers to the genus of which the particular product is a species. Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 143 (2d Cir.1997).

A mark is descriptive if it describes the product's features, qualities, or ingredients in ordinary language or describes the use to which the product is put. Id.

A mark is suggestive if it merely suggests the features of the product, requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods. Id.

An arbitrary mark applies a common word in an unfamiliar way. Id.

A fanciful mark is not a real word at all, but is invented for its use as a mark. Id.

Marks that are arbitrary, fanciful, or suggestive are considered "inherently distinctive," and are automatically entitled to protection under the Lanham Act, 15 U.S.C. § 1051, et seq. See Two Pesos, 505 U.S. at 768, 112 S.Ct. at 2757. Marks that are descriptive are entitled to protection only if they have acquired a "secondary meaning" in the marketplace. Id. at 769, 112 S.Ct. at 2757-58. The purpose of a mark is to identify the source of products or services.

"Fanciful, arbitrary and suggestive marks are deemed inherently distinctive. Their intrinsic nature serves to identify a particular source of a product, so they will be automatically protected" without a showing of secondary meaning. Id. A term is descriptive if it "tells something about a product, its qualities, ingredients or characteristics." Estee Lauder Inc., 108 F.3d at 1509. A term is suggestive if it "requires imagination, thought, and perception to reach a conclusion as to the nature of the goods" or services it represents. Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1039 (2d Cir.1992).

It is submitted that the Cheapoair mark is at least suggestive and fanciful.

The mark is suggestive because the mark suggests services and requires an

12

imaginative leap to correctly identify Cheapoair's services. Bihari v. Gross, 119 F.Supp.2d 309, 317 (S.D.N.Y.,2000).

As Cheapoair is not a real word, it is one that has been invented and is therefore a fanciful mark.

As a mark which is suggestive and fanciful, Cheapoair is inherently distinctive and entitled to protection. Bihari, at 318.

## 2.    Commercial use

Cheapoair has brought suit under §§1114, 1125(a), 1125(c) and 1125(d) of the Lanham Act, Title 15, United States Code.

Section 1114 of the Lanham Act forbids a party to *"use in commerce* any reproduction, counterfeit, copy, or colorable imitation of a registered mark *in connection with the sale, offering for sale, distribution, or advertising of any goods or services* on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." (Emphasis added).

15 USC 1125 (a) provides, in part,

"(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

13

**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

15 USC 1125 (c) provides, in part,

"(c) Dilution by blurring; dilution by tarnishment

(1) Injunctive relief

Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."

15 USC 1125 (d) provides, in part,

"(d)                    Cyberpiracy                    prevention

(1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person

(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that--

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or..."

14

An injunction is the appropriate way to stop a defendant from infringing upon

plaintiffs mark.

> "An injunction under §1125(c) is proper to stop *"commercial use in commerce* of a mark or trade name" if that use causes dilution of a famous mark. (Emphasis added). Finally, with respect to §1125(a), defendant may be liable if he has used the plaintiff's mark *"in commerce"* in a way that either "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her *goods, services, or commercial activities* by another person," §1125(a)(1)(A), or " *in commercial advertising or promotion,* misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's *goods, services, or commercial activities,"* §1125(a)(1)(B). (Emphasis added). Section 1125(c)(4)(B) specifically exempts from the scope of all provisions of §1125 the " *noncommercial use* of a mark." (Emphasis added)."

Planned Parenthood Federation of America, Inc. v. Bucci, No. 97 Civ. 0629, 1997

WL 133313(S.D.N.Y March 24, 1997) aff'd, 152 F.3d. 920 (2d Cir. 1998), cert

denied, 525 U.S. 834, 119 S.Ct. 90, 142L.Ed.2d 71(1998).

The scope of "in commerce" as a jurisdictional predicate of the Lanham Act

is broad and has a sweeping reach. Steele v. Bulova Watch Co., 344 U.S. 280,

283, 73 S.Ct. 252, 97 L.Ed. 319 (1952) .

The activity involved in the case at bar meets the "in commerce" standard

for multiple reasons.

First, defendant pissedconsumer.com's use of cheapoair metatags affects

plaintiff's ability to offer its services, travel arrangements, since searchers are

confused when they find that the pissedconsumer's website on Cheapoair is one of

15

the first results of the search for Cheapoair. Cheapoair provides services throughout the United States over the Internet. Defendant's website is available throughout the United States. Defendant's activities are in interstate commerce as its website is available throughout the United States, and its hyperlinks provide the cheapoair.pissedconsumer.com and cheapoair.com.pissedconsumer.coms user the ability to obtain products or services throughout the United States.    Assuming *arguendo* that defendant's activities are not in interstate commerce for Lanham Act purposes, the effect of those activities on plaintiff's interstate commerce activities would place defendant within the reach of the Lanham Act. Franchised Stores of New York. Inc. v. Winter, 394 F.2d 664, 669 (2d Cir.1968).

Additionally, many Internet users access interstate telephone lines to access defendant's web site on the Internet. "The nature of the Internet indicates that establishing a typical home page on the Internet, for access to all users, would satisfy the Lanham Act's "in commerce" requirement." Intermatic v. Toeppen, 947 F.Supp. 1227, 1239 (N.D.Ill.1996), *quoting* 1 Gilson, Trademark Protection and Practice, §5.11(2), p. 5-234 ("there is little question that the 'in commerce' requirement would be met in a typical Internet message").

Moreover, defendant pissedconsumer.com receives income from ads appearing on its websites.

**3.    Likelihood of Confusion**

Plaintiff alleges that both URL addresses and the inclusion of "Cheapoair" in the metatags of the defendant's website(s) are likely to cause confusion. Where

16

the evidence shows that defendant intentionally copied the plaintiff's mark, likelihood of confusion is presumed as a matter of law. See Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 258 (2d Cir.1987).

The likelihood of confusion question generally requires analysis of the classic eight factor test established in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir.1961).

### a. The Polaroid Factors

The Second Circuit set out the factors a court must consider in determining the likelihood of consumer confusion in Polaroid, supra.  Those factors include:

      the strength of plaintiff's mark,

      the degree of similarity between the two marks,

      the competitive proximity of the products or services,

      the likelihood that the plaintiff will bridge the gap between the two

markets,

      the existence of actual confusion,

      the defendant's good faith in adopting the mark,

      the quality of the defendant's product, and

      the sophistication of the purchasers.

"In instances in which a website uses another entity's trademark in the domain name, application of the Polaroid factors is simple because the defendant has adopted a mark-namely, the website domain name-that incorporates or is strikingly similar to another mark. See, e.g., Brookfield Communications, Inc. v.

17

*West Coast Entertainment Corp.,* 174 F.3d 1036 (9th Cir.1999) (defendant adopted domain name of "moviebuff.com"); *New York State Society of Certified Public Accountants v. Eric Louis Assocs.,* 79 F.Supp.2d 331, 340 (S.D.N.Y.1999) (defendant adopted domain name of "www.nysscpa.com" even though the New York State Society of Certified Public Accountants already had a trademark in "NYSSCPA"); *Jews For Jesus,* 993 F.Supp. at 290 (defendant adopted domain name of "jewsforjesus.org"); *Planned Parenthood,* 1997 WL 133313, at *7 n. 9 (defendant adopted domain name of "www.plannedparenthood.com")."   Bihari, supra at 319.

### i.    The Strength of the Mark

Cheapoair's mark is suggestive and fanciful and is inherently distinctive and entitled to protection.  Bihari, at 318.  Cheapoair has registered and has continually used its mark since 2006. Cheapoair uses the mark on its Internet website.  Sood declaration, ¶¶7,8. Cheapoair has spent a significant amount of money to promote its mark.  Sood declaration, ¶15. No other company uses the Cheapoair mark.  It is submitted that these factors show that Cheapoair has a strong mark.

### ii. The Degree of Similarity Between the Marks

In assessing the degree of similarity between competing marks, the Court must endeavor to determine whether any similarity is likely to create confusion. For this purpose, it looks to "the general impression conveyed to the purchasing public by the respective marks." Centaur Communications, Ltd., 830 F.2d at 1226 (quoting C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc., 753 F.2d 14, 18 (2d

Cir.1985)). <u>BigStar Entertainment, Inc. v. Next Big Star, Inc.,</u> 105 F.Supp.2d 185, 205 S.D.N.Y.,2000.

The mark, "cheapoair.com", when compared to "cheapoair.pissedconsumer.com and cheapoair.com.pissedconsumer.com" are quite similar and nearly identical.  The only distinction is that "pissedconsumer" appears after cheapoair and cheapoair.com on the pissedconsumer website.  This similarity leads to confusion. The use of the cheapoair mark in the URL of the pissedconsumer websites causes confusion because the viewer believes that he/she is viewing a Cheapoair website. Additionally, the description of Cheapoair's business in the middle of the screen leads one to conclude that they have arrived at the Cheapoair website. It is also reasonable for a viewer to conclude that the hyperlinks in the description of Cheapoair's business would take someone to Cheapoair websites regarding the information in the hyperlink, i.e.: "cheap plane tickets", "car rentals", etc. when in fact, the viewer is taken to a Cheapoair competitor.

In its metatags, the defendant uses "Cheapoair".  Zherebetskiy declaration, ¶¶7, 8.

The fact that pissedconsumer.com uses cheapoair and cheapoair.com in its URL addresses and in its metatags increases the degree of similarity between the marks and the likelihood of confusion among Internet users.

### iii.    The Competitive Proximity of the
### Products or Services

The web sites of plaintiff and defendant are both located on the World Wide Web. Therefore, defendant's web sites at cheapoair.pissedconsumer.com and cheapoair.com.pissedconsumer.com are close in proximity to plaintiff's own web site, www.cheapoair.com. Planned Parenthood, supra, at 8.

Since both sites compete for the same audience-namely, Internet users who are searching for a web site that uses plaintiff's mark as its address, the degree of competitive proximity increases the likelihood of confusion among Internet users." Planned Parenthood, supra, at 8.

### iv.    The Likelihood that Plaintiff Will Bridge the Gap
### Between the Markets

Since the defendant's websites, cheapoair.pissedconsumer.com and cheapoair.com.pissedconsumer.com, provide a description of the plaintiff's business with hyperlinks to its competitors, the parties are vying for users in the same "market." Where the market for competing goods or services is the same, there is no need to consider whether plaintiff will bridge the gap between the markets. Paddington Corp. v. Attiki Importers & Distributors, Inc., 996 F.2d 577, 586 (2d Cir.1993).

### v.  The Existence of Actual Confusion

In the context of Internet web sites, actual confusion is particularly difficult to document. There is no way to learn the identities of the visitors to the web site and ascertain the extent to which they believed the web site to be sponsored by

cheapoair. This factor should thus be of little import. *See, e.g.*, <u>New York State Society of Certified Public Accountants</u>, 1999 U.S. Dist. LEXIS 18543, at *26 (finding likelihood of confusion between NYSSCPA mark and "nysscpa.com" domain name despite proof of only one instance of actual confusion); <u>Planned Parenthood</u>, 1997 U.S. Dist. LEXIS 3338, at *26-27 (finding likelihood of confusion between PLANNED PARENTHOOD mark and "plannedparenthood.com" domain name despite proof of only two instances of actual confusion); <u>Columbia Univ. v. Columbia/HCA Healthcare Corp.</u>, 964 F. Supp. 733, 743 (S.D.N.Y. 1997) ("proof of actual confusion is not necessary").

> vi.    *The Defendant's Good Faith in Adopting the Mark*

It is submitted that the defendant cannot show any good faith basis for adopting plaintiff's cheapoair and cheapoair.com domain marks in its URL and in the selection of its metatags.

Pissedconsumer.com has a First Amendment right to air comments and criticism of Cheapoair. That is not disputed. However, using Cheapoair's metatags so that searchers who are looking for cheapoair or cheapoair.com find cheapoair.pissedconsumer.com and cheapoair.com.pissedconsumer.com combined with the Cheapoair description of business which contains hyperlinks to Cheapoair competitors and the use of the Cheapoair mark in its URL addresses shows that the defendant has not acted in good faith in adopting either the Cheapoair mark or the Cheapoair.com domain.

21

*vii.*        *The Quality of Defendant's Product*

A comparison of the quality of plaintiff's and defendant's products, their web sites and the services/products offered, is most probably irrelevant as the Court cannot compare the two web sites in terms of superior or inferior quality. The two products are vastly similar and convey quite similar messages. Plaintiff's web site offers, *inter alia*, a host of travel services, including individual, group and corporate travel, consumer reviews, a newsletter and the ability to purchase airline tickets, car rentals, make hotel reservations and links to other sites. Defendant's website also provides a host of travel agent services with its link to travel services similar to those that plaintiff offers.

It is submitted that both plaintiff's and defendant's websites provide educational resources.

Any ensuing confusion resulting from defendant's use of plaintiff's mark in its metatags, its domain name and web page address is likely to be destructive to the image that plaintiff, the senior user of the mark, has established. MGM-Pathe Communications Co. v. Pink Panther Patrol, 774 F.Supp. 869, 876 S.D.N.Y.,1991.

*viii. The Sophistication of the Purchasers*

Since the defendant uses the Cheapoair mark in its metatags and in its website URL addresses unsophisticated Internet users will not immediately realize that they have been directed to the defendant's websites either when they see the URL          addresses,         cheapoair.pissedconsumer.com          and cheapoair.com.pissedconsumer.com or when they arrive at the webpage and see

22

the Cheapoair description of business.

It is submitted that the *Polaroid* factors demonstrate that there is a significant likelihood of confusion that warrants the granting of a preliminary injunction.

**C.    Initial Interest Confusion**

Even if actual confusion is unlikely, plaintiff alleges that there is a likelihood of "initial interest confusion."

> "The diversion of initial interest and the resulting relevant confusion under this doctrine relate to what *draws* the consumer to the *other* location in the first place. Even if the customer quickly becomes aware of the competing source's actual identity and can rectify the mistake, the damage to the first user that the courts have identified manifest in three ways: the original diversion of the prospective customers' interest; the potential consequent effect of that diversion on the customer's ultimate decision whether or not to purchase caused by an erroneous impression that two sources of a product may be associated; and the initial credibility which may be accorded by the interested buyer to the junior user's products--customer consideration that otherwise may be unwarranted and that may be built on the strength of the senior user's mark, reputation and goodwill. *See Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1063-64 (9th Cir.1999)* , and cases cited therein.

> The initial interest confusion doctrine was developed by the Second Circuit in connection with Lanham Act infringement disputes involving trademarks of products in brick-and-mortar store commerce. *See Mobil Oil Corp., 818 F.2d 254; Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, 523 F.2d 1331 (2d Cir.1975)* . The doctrine has not been adopted by this Circuit in the context of alleged infringement arising on the Internet. *See New York State Soc'y of Certified Pub. Accountants v. Eric Louis Associates, Inc., 79 F.Supp.2d 331, 356, n. 5 (S.D.N.Y.1999)* . However, the doctrine as applied by the Second Circuit has made clear that the particular instance of infringement at issue derived from just a particular

23

variety of potential customer confusion and that the analysis to be applied to gauge the likelihood of such confusion rested on the same *Polaroid* factors which guided the appraisal of other recognized forms of trademark infringement confusion. This Court sees no reason why the approach to that assessment would be substantially different were the doctrine to be applied to the facts of this case and an infringement claim arising out of trademarks used for commerce conducted through the Internet."

BigStar Entertainment, Inc. v. Next Big Star, Inc., 105 F.Supp.2d 185, 207 S.D.N.Y.,2000.

An infringement action may be based on a claim that the alleged infringement creates initial consumer interest, even if no actual sale is completed as a result of the confusion. In the cyberspace context, the concern is that potential customers of one website will be diverted and distracted to a competing website. The harm is that the potential customer believes that the competing website is associated with the website the customer was originally searching for and will not resume searching for the original website. Bihari, supra, at 319.

Bihari provides an example of the use of metatags to divert a competitor's customers to defendant's website.

"Entering the company's name as the domain name often fails to take the user to the desired webpage, many users prefer the second search technique. Here, a websurfer enters a particular company name or search request in a search engine. The search engine then displays a list of websites that match the user's request. The search engine ranks the relevant sites according to the relative frequency with which the word or phrase appears in the metatags and in the text of the websites. The websurfer then chooses, based on any number of considerations, which website to visit. Most often, that choice is based on the domain name listed for each search result and a brief description of each webpage provided by the search engine."

24

Bihari, supra, at 311-312.

In the Bihari case, the defendant used Bihari's metatags in its webpages. The court found, however, the defendant's use of Bihari's metatags was not in bad faith nor an attempt to trick users into visiting his website. Bihari, supra, at 321.

Niton Corp. v. Radiation Monitoring Devices, Inc., 27 F.Supp.2d 102 (D.Mass.1998) provides another example of the use of metatags to divert a competitor's customers. Radiation Monitoring Devices ("RMD") and Niton Corporation ("Niton") were direct competitors. RMD used Niton's trademark in its metatag. RMD also directly copied Niton's metatags and HTML code. An Internet search using the phrase "home page of Niton Corporation" revealed three matches for Niton's website and five for RMD's website. RMD was taking advantage of Niton's good will to divert customers to the RMD website.

Another meta tag case is Playboy Enters., Inc. v. Asiafocus Int'l, Inc., No. Civ. A. 97-734-A, 1998 WL 724000, at *3,**6-7 (E.D.Va. Apr. 10, 1998). The court enjoined use of the marks "Playboy" and "Playmate" in the domain name and metatags of defendant's website. The defendant provided adult nude photos on webpages located at "asian-playmates.com" and "playmates-asian.com". The "Playboy" and "Playmate" trademarks were embedded in the metatags. A search for Playboy Enterprises Inc.'s ("Playboy") website would produce a list that included "asian-playmates.com". See id. at *3,*5-6; see also Playboy Enters., Inc. v. Calvin Designer Label, 985 F.Supp. 1220, 1221 (N.D.Cal.1997) (preliminarily enjoining defendant's website, "www.playboyxxx.com" and repeated use of the

"Playboy" trademark in defendant's metatags). In these cases the defendants were diverging potential customers from Playboy's website to their own.

In Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1063-64 (9th Cir.1999), initial interest confusion was first applied to metatags. This case provided proof of diversion. Brookfield sought to protect its trademark in its "MovieBuff" software. This software provided entertainment industry information. Plaintiff had created an Internet based searchable database on the web under the "Moviebuff" mark. The defendant, West Coast, a video rental store chain, registered a site called "moviebuff.com". This site also contained a searchable entertainment database. The court held that defendant's use of the "moviebuff.com" domain name constituted trademark infringement. Id. at 1061. The court also enjoined West Coast from using any term confusingly similar to "moviebuff" in its metatags based on the initial interest confusion caused by the use of Brookfield's mark. See id at 1065.

In Niton, Playboy and Brookfield, as in the case at bar, the defendant was using the plaintiff's mark to trick Internet users into visiting defendant's website. The visitors believed that they were visiting plaintiff's website or that the defendant's website was sponsored by the plaintiff. Bihari, supra at 321.

Initial interest confusion damage to the consumer is identified by the court in Brookfield Communications, Inc. at 1063-64 in three ways: the original diversion of the prospective customers' interest; the potential consequent effect of that diversion on the customer's ultimate decision whether or not to purchase caused

by an erroneous impression that two sources of a product may be associated; and the initial credibility which may be accorded by the interested buyer to the junior user's products--customer consideration that otherwise may be unwarranted and that may be built on the strength of the senior user's mark, reputation and goodwill.

The metatags in the case at bar can cause the original diversion of the prospective consumer to the cheapoair.pissedconsumer.com and cheapoair.com.pissedconsumer.com. websites. The potential consequent effect of that diversion is that the consumer will choose a hyperlink, either in the description of the Cheapoair business or elsewhere on the page, that will divert the consumer to one of Cheapoair's competitors. Cheapoair is a strong consumer brand and consideration by a consumer will be given to one of the hyperlinks that appear in the description of Cheapoair's business since it is likely that the consumer will believe they are being sent to a Cheapoair website.

Because of the confusion caused by pissedconsumer's use of cheapoair metatags and cheapoair in its URL addresses, confusion is likely caused as to the affiliation, connection or association of cheapoair or cheapoair's origin, sponsorship or approval of the defendant's offering of goods or services.

### D.    Dilution under §43 (c) of the Lanham act

Section 43(c) of the Lanham Act (15 U.S.C.A. 1125(c) provides in relevant part that,

> "[t]he owner of a famous mark shall be entitled ... to an injunction against another person's commercial use in

27

commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark...." 15 U.S.C. § 1125(c)(1). There are thus "five necessary elements to a claim of dilution [under § 43(c) ]: (1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark." Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208, 214 (2nd Cir.1999). In determining whether a mark is distinctive and famous, a court may consider the following factors:

(A) the degree of inherent or acquired distinctiveness of the mark;

(B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;

(C) the duration and extent of advertising and publicity of the mark;

(D) the geographical extent of the trading area in which the mark is used;

(E) the channels of trade for the goods or services with which the mark is used;

(F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;

(G) the nature and extent of use of the same or similar marks by third parties; and

(H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register."

Dilution is caused through the defendant's use of cheapoair and cheapoair.com in its URL addresses and in its use of Cheapoair's metatags.

28

A mark can be diluted in two ways through either blurring or tarnishment. *See* Clinique Labs., Inc. v. Dep Corp., 945 F.Supp. 547, 561 (S.D.N.Y.1996) (*citing* H.R.Rep. No. 374, 104th Cong., 1st Sess. 3, reprinted in 1995 U.S.C.C.A.N. 1029, 1030).

Blurring occurs "where the defendant uses ... the plaintiff's trademark to identify the defendant's goods or services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's services." Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955, 966 (2d Cir.1996) (citation and internal quotation omitted).

The Second Circuit has identified ten nonexclusive factors that may be taken into account in determining whether dilution-particularly of the blurring type-has occurred: (1) distinctiveness of the senior mark; (2) similarity of the marks; (3) proximity of the products and likelihood of bridging the gap; (4) interrelationship among factors (1)-(3); (5) shared consumers and geographic limitations; (6) sophistication of consumers; (7) actual confusion; (8) adjectival or referential quality of the junior use; (9) harm to the junior user and delay by the senior user; and (10) effect of a senior user's prior laxity in protecting the mark. *See* Nabisco, 191 F.3d at 217-221. New York State Soc. of Certified Public Accountants v. Eric Louis Associates, Inc. at 344-345.

The Second Circuit has held that "'[t]arnishment' generally arises when the plaintiff's trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the

owner's product. In such situations, the trademark's reputation and commercial value might be diminished because the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods, or because the defendant's use reduces the trademark's reputation and standing in the eyes of consumers as a wholesome identifier of the owner's products or services." *Deere & Co. v. MTD Prods., Inc.,* 41 F.3d 39, 43 (2d Cir.1994) (citations omitted).

Plaintiff has not determined the quality of all the services offered by pissedconsumer.com. and therefore is not in position to know if blurring has occurred through tarnishment.

It is respectfully submitted that since the URL addresses for the pissedconsumer websites contain cheapoair and cheapoair.com and the defendant uses the Cheapoair mark in its metatags and for the reasons stated in this brief, there has been a dilution of the Cheapoair mark.

E.    Anticybersquatting Consumer Protection Act

15 U.S.C. 1125(d)

The Anticybersquatting Consumer Protection Act, 15 U.S.C. 1125(d), provides that plaintiffs are entitled to injunctive relief and damages where defendant, with bad faith intent to profit from the mark, registers, or uses a domain name that is identical or confusingly similar to plaintiff's mark.

<u>15 U.S.C. 1125(d)</u> states, in part,

> **"(1)(A)** A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
>
> **(i)** has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
> **(ii)** registers, traffics in, or uses a domain name that--
>
> **(I)** in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>
> **(II)** in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
>
> **(III)** is a trademark, word, or name protected by reason of <u>section 706 of Title 18</u> or <u>section 220506 of Title 36</u>."

The statute continues to describe the facts a court may consider in determining bad-faith,

> **"(B)(i)** In determining whether a person has a bad faith intent described under subparagraph (a), a court may consider factors such as, but not limited to
>
> **(I)** the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> **(II)** the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> **(III)** the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

**(IV)** the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

**(V)** the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

**(VI)** the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

**(VII)** the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

**(VIII)** the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

**(IX)** the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

In the case at bar, bad faith can be shown because pissedconsumer.com is using cheapoair and cheapoair.com without consent or permission in its metatags and in its domain name. The pissedconsumer domain names consists partially of Cheapoair's domain name. Moreover, pissedconsumer.com cannot show that it had

prior use of the Cheapoair mark. Pissedconsumer's use of the Cheapoair mark is not a bona fide noncommercial use. There is clearly an intent to divert customers from Cheapoair's website to its own its website. The Cheapoair mark is distinctive, suggestive and fanciful. Pissedconsumer's use of the Cheapoair mark has caused harm to the goodwill represented by the mark, has tarnished and disparaged the mark and created a likelihood of confusion.

POINT II

New York General Business Law §360-l

UNDER GBL §360-L, PLAINTIFF CHEAPOAIR

IS ENTITLTED TO AN INJUCTION

New York General Business Law §360-l is entitled, "Injury to business reputation; dilution". It reads as follows:

> "Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

"Because the language of Section 43(c) of the Lanham Act mirrors the traditional New York dilution analysis, courts apply the same analysis to dilution claims under the Lanham Act and New York state law." *Hard Rock Cafe Int'l (USA) Inc. v. Morton,* 1999 WL 717995,*32 n.29 (S.D.N.Y.) (citations and internal quotations omitted). New York State Soc. of Certified Public Accountants v. Eric Louis Associates, Inc. at 346.

33

For the same reasons cited in support of injunction under the Lanham act, Cheapoair is entitled to an injunction under New York General business Law §360-l.

Finally, pissedconsumer cannot show that it is making fair use of the Cheapoair mark. "When another's trademark (or a confusingly similar mark) is used without permission *for the purpose of source identification,* the trademark law generally prevails over the First Amendment. Free speech rights do not extend to labelling or advertising products in a manner that conflicts with the trademark rights of others. In these circumstances, the exclusive right guaranteed by the trademark law is generally superior to the general free speech rights of others. *See* Rogers v. Grimaldi, 875 F.2d 994, 999 (2d Cir.1989)." Yankee Pub. Inc. v. News America Pub. Inc., 809 F.Supp. 267 (S.D.N.Y.,1992).

### The Balance of Hardships

In balancing the equities of the parties, Cheapoair has a genuine interest in preventing the dilution of its mark. The use of the Cheapoair mark by the defendant infringes Cheapoair's rights in its valuable mark. Moreover, defendant has no claim of right in Cheapoair's mark as used in connection with its website. Defendant's continued use of the Cheapoair mark in its metatags and URL addresses is inexcusable. Equities clearly favor Cheapoair's request for a preliminary injunction.

### *CONCLUSION*

For the above stated reasons, plaintiffs' motion seeking a preliminary injunction should be granted.

Dated:     New York, New York
           June 30, 2008

34

Respectfully submitted,

Tedd Kessler (TK-2967)
**THE LAW OFFICE OF TEDD KESSLER, P.C.**
ATTORNEYS FOR PLAINTIFF
302 Fifth Avenue
8th Floor
New York, New York 10001
(212) 477-3200

c:\tkdata\cheapo\brief in support of tro 6-29-08 a.docx