Anna Vishev (AV 3601)
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York  10036
Phone: (212) 382-0700
Fax:    (212) 382-0888
E-mail: avishev@ostrolenk.com

Attorneys for Defendants

7/5357-2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAREPORTAL, INC. D/B/A CHEAPOAIR,<br><br>      Plaintiff,<br><br>      v.<br><br>OPINION CORP. D/B/A PISSEDCONSUMER,<br><br>      Defendant. | Civil Action No. 08 CV 05964 (DLC) |

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

00956555.1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................... 1

STATEMENT OF FACTS ...................................................... 1

ARGUMENT ................................................................ 4

I. THE GENERAL STANDARDS FOR INJUNCTIVE RELIEF ........................ 4

II. FAREPORTAL IS NOT ENTITLED TO THE PRELIMINARY
INJUNCTION UNDER ITS LANHAM ACT CLAIMS ............................ 5

   A. Fareportal is Unable to Establish Reasonable Probability of Success on the Merits . . 5

      1. Opinion Corp. Has Not Infringed Any Trademark Rights
      in the Name CHEAPOAIR ........................................ 5

        a. Plaintiff does not own any Protectable Trademark Right
        in the Name of CHEAPOAIR ................................. 5

        b. Opinion's Use of the Name CHEAPOAIR Does Not Meet
        The Commercial Use Requirement ........................... 7

        c. Opinion's Use of the Name CHEAPOAIR Does Not Create
        The Likelihood of Confusion .............................. 10

        d. Opinion's Use of the Name CHEAPOAIR Does Not Create
        The Initial Interest Confusion ........................... 15

     2. Opinion Has Not Diluted Any Trademark Rights in the
     Name CHEAPOAIR ............................................. 17

     3. Opinion's Use of the Name CHEAPOAIR Did Not Violate
     The Anti-Cybersquatting Protection Act ....................... 19

   B. Fareportal Is Not Being Irreparably Harned by Opinion's Use of the Name
   CHEAPOAIR ...................................................... 21

III.   FAREPORTAL IS NOT ENTITLED TO THE
     PRELIMINARY INJUNCTION UNDER ITS NEW YORK GBL CLAIM ........... 22

00956555.1

A.  Plaintiff is not Likely to Prevail on the Merits
of its New York GBL Section 360-L Claim . . . . . . . . . . . . . . . . . . . . . . . . . 22

IV.  BALANCE OF THE HARDSHIPS IS IN FAVOR OF THE DEFENDANT . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

ii

## TABLE OF AUTHORITIES

### CASES

*JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . 4

*Beneficial Corp. v. Beneficial Capital Corp.*, 529 F. Supp. 445, 450 (S.D.N.Y. 1982) . . . . . . . . 8

*Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1055-56 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 482-83 (2d Cir. 1996) . . . . . . . . . . . . . . 14

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . 7

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 554, 150 L. Ed. 2d 532, 121 S. Ct. 2404 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Charles of the Ritz Group, Ltd. v. Quality King Distribs., Inc.*, 832 F.2d 1317, 1322 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Checkpoint Sys. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 296-97 (3d. Cir. 2001) . . 15

*Deere & Co. v. MTD Prods.*, 41 F.3d 39, 43 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Dorr-Oliver*, 94 F.3d at 382 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Estee Lauder, Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508 (2d Cir. 1997) . . . . . . . . . . . . . . . . . 5

*Franchised Stores of New York, Inc. v. Winter*, 394 F.2d 664, 669 (2d Cir. 1968) . . . . . . . . . . 7

*Huthwaite, Inc. v. Sunrise Assisted Living, Inc.*, 261 F. Supp. 2d 502, 517 (E.D. Va. 2003) . . . 17

*Intermatic Inc. v. Toeppen*, 947 F. Supp. 1227, 1239-40 (N.D. Ill. 1996) . . . . . . . . . . . . . . . . . 8

*Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1485 (10th Cir. 1987) . . . . . . . . . . 11

*JSG Trading Corp. v. Tray-Wrap,* Inc., 917 F.2d 75, 80 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . 4

*L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 33 (1st Cir. 1987) . . . . . . . . . . . . . . . . 16

*Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 809 (6th Cir. 2004) . . . . . . . . . . 20

iii

*Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 17

*Mayflower Transit, L.L.C. v Prince*, 314 F. Supp. 2d 362 (D.N.J. 2004) . . . . . . . . . . . . . . . . . . 20

*McLaughlin, supra* citing *Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.*,
70 A.D. 2d 1021, 1022, 418 N.Y.S. 2d 216 (3d Dep't. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*N.Y. Stock Exch.*, 293 F.3d at 558 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*N.Y. Stock Exch., Inc. v. New York, New York Hotel, LLC*, 293 F.3d 550, 557 (2d Cir.2002). . . 22

*PACAAR Inc. v. Telescan Techs., L.L.C.*, 319 F.3d 243, 253 (6th Cir. 2003) . . . . . . . . . . . . . . 15

*Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 584 (2d Cir. 1993) . . . . 10

*Planned Parenthood Federation of America, Inc. v. Bucci*, No. 97 Civ 0629,
1997 U.S. Dist. LEXIS 3338, 1997 WL 133313 (S.D.N.Y. March 24, 1997) . . . . . . . . . . . . 8, 11

*Plus Prods. v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1004 (2d Cir. 1983) . . . . . . . . . . . . . . 10

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961) . . . . . . . . . . . . . . . . 10

*Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002) . . . . . . . . . . . . . . . 15

*Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 74 (10th Cir. 1958) . . . . . . . . . . . . . . . . . . 14

*TCPIP Holding Co., Inc. v. Haar Communications, Inc.*, 244 F.3d 88, 100, 2001 U.S. App.
LEXIS 2867, 57 U.S.P.Q.2D (BNA) 1969 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*The Sports Auth. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996). . . . . . . . . . . . . . 5

*TMI, Inc. v. Maxwell*, 368 F.3d 433 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L. Ed. 2d 615
(1992) (citing 15 U.S.C. Section 1052) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Tzougrakis v Cyveillance, Inc.*, 145 F Supp 2d 325 (SD NY 2001) . . . . . . . . . . . . . . . . . . . . . . . 9

*United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97, 63 L. Ed. 141, 39 S. Ct. 48, 1918
Dec. Comm'r Pat. 369 (1918) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

iv

*Utah Lighthouse Ministry v. Foundation For Apologetic Information And Research*, 527 F.3d 1045, 2008 U.S. App. LEXIS 11523, *28 (emphasis added) ........................... 19

*Wojnarowicz v. American Family Ass'n*, 745 F. Supp. 130, 141-42, 17 U.S.P.Q.2D (BNA) 1337 (S.D.N.Y. 1990) ...................................................................... 9

## OTHER AUTHORITIES

1 McCarthy on Trademarks and Unfair Competition § 2:7 (4th ed. 2004) .................. 9

1995 U.S.C.C.A.N. at 1035 ......................................................... 17

H.R. Rep. No. 104-374, at 4 (1995), *reprinted in* 1995 U.S.C.C.A.N. 1029, 1031 ........... 17

*Lanham Act Section 7(b)*, 15 U.S.C.A ............................................... 6

N.Y. Gen. Bus. Law §360-l ......................................................... 22

S. Rep. No. 106-140 (1999), 1999 WL 594571, at *8 ................................. 17

S. Rep. No. 106-140, at 4 (1999) .................................................. 19

## STATUTES

15 U.S.C. §1125(c)(4) .............................................................. 17

*15 U.S.C. § 1125(a)(1)* ............................................................ 7

*15 U.S.C. § 1125(a)(1)(A)* ......................................................... 10

*15 U.S.C. § 1125(c)(1)* ............................................................ 16

*15 U.S.C. § 1125(d)* .............................................................. 18

*15 U.S.C. § 1125(d)(1)(A)* ......................................................... 19

*15 U.S.C. § 1125(d)(1)(B)(i)* ...................................................... 19

00956555.1

*15 U.S.C. § 1125(d)(1)(B)(i)(IV)* ................................................. 20

*15 U.S.C. § 1125(d)(1)(B)(ii)* .................................................... 21

*15 U.S.C. §1125* ................................................................. 8

15 U.S.C. §1125 (c)(1) ........................................................... 18

vi

00956555.1

## PRELIMINARY STATEMENT

Defendant Opinion Corp. ("Opinion") hereby opposes Fareportal, Inc.'s Motion for a Preliminary Injunction (the "Motion"). Plaintiff Fareportal, Inc. ("Fareportal") has utterly failed to demonstrate any protectable right in the name CHEAPOAIR, whether by registration or use. Furthermore, even if in the unlikely event that Fareportal has proven a likelihood that it can establish at trial that it owns trademark rights in the name CHEAPOAIR, Fareportal has failed to establish that Opinion used the name CHEAPOAIR in commerce or that Opinion's use of the name CHEAPOAIR created a likelihood of confusion as to the source. Finally, granting the preliminary injunction would cause economic hardship to Opinion and stifle its customers rights to post comments and critiques about unsatisfactory services.

## STATEMENT OF FACTS

Defendant Opinion Corp. (hereinafter "Opinion") is a New York corporation. (See, *Declaration of Alex Syrov*, Exhibit A, ¶2). Opinion owns and operates website www.pissedconsumer.com. *Id.* at ¶3 Domain name pissedconsumer.com is registered with the registrar GoDaddy.com. *Id.* As the name implies, website www.pissedconsumer.com provides a forum for consumers to post their opinions, complaints and other comments with respect to various product and/or service providers. *Id.* at ¶4 Additionally, Opinion allows the product/service providers to reply to the posted customers' complaints by posting their own comments. Thus, both sides of a transaction are given equal access to the pissedconsumer.com forum.

1

Plaintiff, Fareportal, Inc., d/b/a/ Cheapoair, (hereinafter "Fareportal") operates a website www.cheapoair.com providing on-line travel services. Some of Fareportal's customers posted unfavorable comments about Fareportal's services on the Opinion's website. Printouts of some of these comments are attached hereto as Exhibit B. As can be seen from the printouts, Fareportal had the opportunity to respond to all of these comments and indeed responded to some of them.

As any other domain name, pissedconsumer.com ends in a top-level domain name, i.e., "com", and includes a second-level domain name, i.e., "pissedconsumer". When visitors of pissedconsumer.com file a report they are requested to provide a title of the report, name of the company and name of the product. System constantly checks interest and volume of readers for each report. See *Syrov Declaration* ¶5. Once a particular report generates a predetermined number of hits, system uses the information provided by the consumer to create a sub-domain. *Id.* Accordingly, when the volume of readers of the reports concerning Fareportal's website exceeded a predetermined number, system created a sub-domain cheapoair.pissedconsumer.com. A listing of various reports posted by consumers with respect to Fareportal's website with the corresponding number of hits generated by each report is attached hereto as Exhibit E. Unlike domain names, sub-domains are not registered anywhere because they only exist in association with the domain name to categorize a portion of the website. See *Syrov Declaration* ¶6. An article from websitegear.com explaining the nature of sub-domains is attached hereto as Exhibit F. The article is offered for the convenience of the Court only.

Opinion generally uses three groups of meta tags on its website: Title Meta Tags, Description Meta Tags, and Keywords Meta Tags. When a consumer files a report, the system

summarizes the report and places this summary as a Description Meta Tag. See *Syrov Declaration* ¶7. A third-party Application Programming Interface ("API") is used to extract keywords from a consumer's report for the Keywords Meta Tags. Finally, a Title Meta Tag is generated directly from the title provided by the consumer. *Id.* Thus, generation of the meta tags on Opinion's website is consumer-report driven and depends on the keywords and other information provided by the consumers.

There are two types of in-text hyperlinks employed at individual pages of pissedconsumer.com: hyperlinks to third-parties' websites and links to other pages at pissedconsumer.com. *Id.* at ¶8 Opinion utilizes services of a third-party advertizing agency to generate hyperlinks to websites of others. These hyperlinks are generated in real time, i.e., when a page viewer opens a particular page certain words are converted into hyperlinks. If the page viewer points its cursor to such hyperlink, an informational pop-up message appears on the screen informing the viewer about where the hyperlinks are connecting to. The viewer may then click on the hyperlink and get redirected to the advertized third-party website. *Id.* Each pop-up message is clearly labeled with the advertized party's name, does not include any reference to the Fareportal's website or the CHEAPOAIR name and gives the viewer time and information sufficient to consider whether to connect to the third-party website. Opinion does not exercise any control over creation of the hyperlinks to the advertized websites. Contrary to the Fareportal's allegations, majority of the hyperlinks at report pages involving cheapoair.com are not connected to Plaintiff's competitors. Specifically, in the report dated August 5, 2008, Cheapoair Complaint by Barbie (see Exhibit B), the word "tickets" is linked to www.Jawbone.com (Bluetooth®-related services), the word "website" is linked to

3

www.SugarDaddyForMe.com (dating services), the word "email" is linked to

www.blackberry.com and the word "reservation" is linked to www.Dell.com. None of these

websites are travel-related. Moreover, the same word is typically linked to the same website at

each page of pissedconsumer.com.

Opinion does not sell, provide or offer any travel-related products or services

either at the pissedconsumer.com or otherwise. It simply offers a gripe site for dissatisfied

consumers.

**ARGUMENT**

## I.  THE GENERAL STANDARDS FOR INJUNCTIVE RELIEF

Issuance of a preliminary injunction is a drastic and extraordinary remedy.  See

*JSG Trading Corp. v. Tray-Wrap,* Inc., 917 F.2d 75, 80 (2d Cir. 1980); *Borey v. National Union*

*Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991)*; Clairol, Inc. v. Gillette Co.*, 389 F.2d 264, 265 (2d

Cir. 1968).  To obtain a preliminary injunction in the Second Circuit, the moving party bears the

burden of proving (a) irreparable harm, and (b) either a likelihood of success on the merits, or

sufficiently serious questions going to the merits to make them a fair ground for litigation and

that the balance of hardships tips decidedly in the movant's favor.  *Fun-Damental Too Ltd. v.*

*Gemmy Industries Corp.*, 111 F.3d 993 (2d Cir. 1997), *citing Jackson Dairy, Inc. v. H.P. Hood &*

*Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) *(per curiam).*  See also *Molloy v. Metropolitan*

*Transportation Authority*, 94 F.3d 808 (2d Cir. 1996); *JSG Trading,* 917 F.2d at 79; *Dirk*

*Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 135-36 (2d Cir. 1992).  The movant must show a

likelihood of success not only on the merits of its own claims, but as to the non-movant's

defenses.  Where, as here, a preliminary injunction will, if granted, provide the movant with

substantially all of the relief sought ultimately by it in the action, a heightened standard should be

applied making it more difficult to obtain the injunction. See *Triebwasser & Katz v. AT&T,* 535

F.2d 1356, 1360 (2d Cir. 1976); *Knapp v. Walder*, 367 F. Supp. 385, 388 (S.D.N.Y. 1973);

*Foundry Services, Inc. v. Beneflux Corp.*, 206 F.2d 214, 216 (2d Cir. 1953). As demonstrated

below, Fareportal has not shown that it is entitled to the preliminary injunction it seeks under any

applicable standard.

## II. FAREPORTAL IS NOT ENTITLED TO THE PRELIMINARY INJUNCTION UNDER ITS LANHAM ACT CLAIMS

### A. Fareportal is Unable to Establish Reasonable Probability of Success on the Merits

#### 1. Opinion Corp. Has Not Infringed Any Trademark Rights in the Name CHEAPOAIR

##### (a) Plaintiff does not own any protectable trademark right in the name CHEAPOAIR

To establish a claim for trademark infringement a plaintiff must first prove

ownership of a valid mark that is entitled to the protection of the law. See *Estee Lauder, Inc. v.*

*The Gap, Inc.*, 108 F.3d 1503, 1508 (2d Cir. 1997); *The Sports Auth. v. Prime Hospitality Corp.*,

89 F.3d 955, 960 (2d Cir. 1996).

Fareportal's allegations regarding protectability of the name CHEAPOAIR as a

trademark are convoluted at best. In its First Amended Complaint, Fareportal alleges that

"Defendant's activities constitute infringement of Plaintiff's federally registered mark." See,

*First Amended Complaint* (hereinafter "*Complaint*"), ¶15. However, Fareportal does not own a

federal trademark registration for the name CHEAPOAIR. In fact, according to the records of

the U.S. Patent and Trademark Office, an application for federal trademark registration for the

name CHEAPOAIR.COM was filed by an applicant having the same address as the Plaintiff and

was refused by the Office under 15 U.S.C. 1052(d) as being nearly identical and likely to cause

confusion with the existing mark CHEAPAIR INC. (Registration No. 28/90981). See Exhibit D.

Moreover, contrary to the Plaintiff's allegations, Fareportal does not even own a

federal trademark registration in the slogan CHEAPOAIR.COM THE ONLY WAY TO GO.

This slogan is the subject of the Trademark Application Serial No. 77/422393, which, as of the

date of this writing, has not been allowed by the Trademark Office. See, Exhibit C.

As a result, Fareportal cannot rely upon any presumptions afforded by a federal

trademark registration. *Lanham Act Section 7(b)*, 15 U.S.C.A. Section 1057(b) ("A certificate of

registration . . . shall be prima facie evidence . . . of the registrant's ownership of the mark . . .").

Absent federally registered rights, Fareportal has to establish common law

trademark rights. As Fareportal correctly stated in its Memorandum of Law in Support of

Plaintiff's Motion for a Preliminary Injunction (hereinafter "Memorandum"), to be valid and

protectable, a mark must be capable of distinguishing the products it marks from those of others.

See, *Memorandum* at 11, *citing Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112

S.Ct. 2753, 120 L. Ed. 2d 615 (1992) (citing 15 U.S.C. Section 1052). However, as evidenced by

the decision of the Trademark Office, enclosed as part of the Exhibit D, name

CHEAPOAIR.COM cannot distinguish services of the Plaintiff from services of American

Travel Solutions, Inc. ("American"), the owner of the registered mark CHEAPAIR INC.

Specifically, American has registered CHEAPAIR INC. for "Travel agency

services, namely making reservations and bookings for airplane transportation, car rentals and

arranging cruises." See Exhibit D. Fareportal seeks to prove distinctiveness of

CHEAPOAIR.COM, a name which is nearly identical to CHEAPAIR. The marks are clearly designed and intended to create the same commercial impression, meaning and connotation in the minds of potential purchasers and end users of the identified services. Specifically, both marks create the impression of "air", as in "airfare", which is "cheap" or very inexpensive. Consumers will undoubtedly recognize and call for the services of both parties by the same wording, and are at least likely to be confused, therefore, with respect to the source of or origin of the services they seek. Moreover, the mark CHEAPAIR INC. is registered for the same services which are provided by Fareportal at its website. Both Fareportal and American offer travel services and offer bookings for the same types of travel. Services of both Fareportal and American are likely to be advertised through the same media and offered through the same channels of trade. Thus, the same consumers and consumer groups are likely to encounter the services of both companies, and consumer confusion regarding the source of the services encountered is highly likely. Thus, both the marks and the services are either identical or very similar. A mark which cannot distinguish services of its holder from services of another cannot be distinctive and cannot acquire a secondary meaning. Thus, Fareportal does not own any protectable trademark right in the name CHEAPOAIR.

### (b) Opinion's Use of the Name CHEAPOAIR Does Not Meet The Commercial Use Requirement

To invoke the protections of the Lanham Act, a plaintiff must show that the alleged infringer used the plaintiff's mark "in connection with any goods or services." *15 U.S.C. § 1125(a)(1)*; *cf. Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005). This is commonly described as the commercial use requirement.

Fareportal argues that because Opinion's website is available on the Internet throughout the United States, Defendant's use of the name CHEAPOAIR on its website constitutes use in interstate commerce. See *Memorandum* at 16 (*citing Franchised Stores of New York, Inc. v. Winter*, 394 F.2d 664, 669 (2d Cir. 1968); *Planned Parenthood Federation of America, Inc. v. Bucci*, No. 97 Civ 0629, 1997 U.S. Dist. LEXIS 3338, 1997 WL 133313 (S.D.N.Y. March 24, 1997); *Intermatic Inc. v. Toeppen*, 947 F. Supp. 1227, 1239-40 (N.D. Ill. 1996)). Plaintiff mischaracterizes holdings of these courts.

It is important to distinguish between the merely jurisdictional "in commerce" requirement, see *15 U.S.C. §1125*, and the "in connection with any goods and services" requirement that establishes a violation of section 43 of the Lanham Act. See *Bosley*, 403 F.3d at 677. All three of the district court decisions that Plaintiff cites held that the use of a trademark on the Internet satisfies only the jurisdictional requirement. These courts concluded that each defendant's use of the trademark was in connection with goods and services, but based on facts other than the mere use of the Internet. Opinion agrees that Internet is generally an instrumentality of interstate commerce and that the jurisdiction of the Lanham Act constitutionally extends to unauthorized uses of trademarks on the Internet. However, this does not mean that any use of the Internet is necessarily commercial for the purposes of the Lanham Act, as Plaintiff advocates. Moreover, conflating these two "commerce" requirements would greatly expand the scope of the Lanham Act to encompass objectively noncommercial speech.

Fareportal's interpretation of the Lanham Act would encompass almost all uses of a trademark on the Internet, even when the mark is merely being used to identify the object of consumer criticism. This broad view of the Lanham Act is supported by neither the text of the

statute nor the history of trademark laws in this country. "Trademark laws are intended to protect" consumers from purchasing the products of an infringer "under the mistaken assumption that they are buying a product produced or sponsored by [the trademark holder]." *Beneficial Corp. v. Beneficial Capital Corp.*, 529 F. Supp. 445, 450 (S.D.N.Y. 1982). In *Wojnarowicz v. American Family Ass'n*, the court observed that Section 43(a) "has never been applied to stifle criticism of the goods or services of another by one . . . who is not engaged in marketing or promoting a competitive product or service. . ." 745 F. Supp. 130, 141-42, 17 U.S.P.Q.2D (BNA) 1337 (S.D.N.Y. 1990). The Lanham Act cannot be used as a pretext to stifle criticism of goods or services by someone, such as a consumer advocate, who is not engaged in marketing or promoting a competitive product or service. See, *Tzougrakis v Cyveillance, Inc.*, 145 F Supp 2d 325 (SD NY 2001). Limiting the Lanham Act to cases where a defendant is trying to profit from a plaintiff's trademark is consistent with the Supreme Court's view that "[a trademark's] function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his." *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97, 63 L. Ed. 141, 39 S. Ct. 48, 1918 Dec. Comm'r Pat. 369 (1918); *see also* 1 McCarthy on Trademarks and Unfair Competition § 2:7 (4th ed. 2004). Thus, the appropriate inquiry is whether Opinion offers competing services to the public. Opinion is not Fareportal's competitor; it is Fareportal's critic. Moreover, Opinion's use of the CHEAPOAIR name is not in connection with a sale of goods or services – it is in connection with the expression of customers' opinions about Fareportal's goods and services.

The dangers that the Lanham Act was designed to address are simply not at issue in this case. The Lanham Act, expressly enacted to be applied in commercial contexts, does not

prohibit all unauthorized uses of a trademark. Opinion's use of the CHEAPOAIR name simply cannot mislead consumers into buying a competing product – no customer will mistakenly purchase a travel-related product from pissedconsumer.com under the belief that the product is being offered by Fareportal. Neither is Opinion capitalizing on the good will Fareportal has created in its mark. Any harm to Plaintiff arises not from a competitor's sale of a similar product under the CHEAPOAIR name, but from customer's criticism of Fareportal's goods and services posted on the Opinion's website. Plaintiff cannot use the Lanham Act either as a shield from customers' criticism at the Defendant's site, or as a sword to shut pissedconsumer.com up.

(c)    **Opinion's Use of the Name CHEAPOAIR Does Not Create The Likelihood of Confusion**

Even if Defendant's use were determined to be commercial, it would only infringe upon Plaintiff's trademark rights if the use created a likelihood of confusion. *15 U.S.C. § 1125(a)(1)(A)*.

The likelihood of confusion inquiry entails consideration of the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961): (1) the strength of plaintiff's mark; (2) the degree of similarity between plaintiff's and defendants' marks; (3) the proximity of the products; (4) the likelihood that either owner will bridge the gap, using the mark on products closer to the other's area of commerce; (5) the sophistication of the buyers; (6) quality of the defendants' product; (7) actual confusion; and (8) good or bad faith. See *TCPIP Holding Co., Inc. v. Haar Communications, Inc.*, 244 F.3d 88, 100, 2001 U.S. App. LEXIS 2867, 57 U.S.P.Q.2D (BNA) 1969 (2d Cir. 2001). A court's evaluation of these factors should not be mechanical, nor is any single factor determinative. See *Plus Prods. v. Plus Discount Foods, Inc.*,

722 F.2d 999, 1004 (2d Cir. 1983). Rather, a court should focus on the ultimate question of whether consumers are likely to be confused. See *Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 584 (2d Cir. 1993).

As to the first factor, Fareportal alleges that its mark is strong and is entitled to protection. See *Memorandum* at 18. However, once again it is not clear which mark Plaintiff is referring to. As explained above, the name CHEAPOAIR is not distinctive, cannot acquire any secondary meaning and is not entitled to trademark protection at all. The slogan CHEAPOAIR.COM THE ONLY WAY TO GO may be entitled to protection. However, Plaintiff offered no evidence supporting a proposition that it is a strong mark. Specifically, Plaintiff states that it "has spent a significant amount of money to promote its mark. Sood declaration, ¶15" *Id.* However, paragraph 15 of the Declaration of Harsh Sood (hereinafter "Sood Declaration") states as follows:

> Ticket sales have dropped dramatically for Cheapoair from June 2008 in comparison to June 2007 due to the diversion of potential customers from the Cheapoair website. The loss in business revenue to Cheapoair for the month of June 2008 in comparison to June 2007 is more than seven (7) figures. *Sood Declaration* ¶15.

Nothing in the above cited paragraph indicates that Fareportal spent any money at all to promote any of its marks. Moreover, Opinion does not even use the above slogan on its website Accordingly, the first factor weighs in favor of the Defendant.

Opinion does not dispute that it uses the name CHEAPOAIR in its sub-domain and in its meta tags. Evidence that the alleged infringer chose a mark with the intent to copy, rather than randomly or by accident, typically supports an inference of likelihood of confusion. See *Planned Parenthood Fed'n of Am., Inc.*, 1997 U.S. Dist. LEXIS 3338, 1997 WL 133313, at

*3. However, such inference arises only if the alleged infringer intended to benefit from the reputation or goodwill of the trademark owner. See *Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1485 (10th Cir. 1987). Opinion could not have intended to benefit from Fareportal's goodwill since it has created a forum for criticizing Fareportal's goods and services. In this context, Opinion's use of the name CHEAPOAIR should be viewed as critical parody where the benefit to the Defendant arises from the humorous or critical association and not from public confusion as to the source of the marks. Therefore, no inference of confusion can be drawn from the intentional use simply as a critical parody. Finally, the names of the Opinion's sub-domain cheapoair.pissedconsumer.com and Fareportal's cheapoair.com are not identical. While Defendant's sub-domain name contains the word "cheapoair" the use of the additional phrase "pissedconsumer" in itself suggests that the sub-domain contains criticism of the Plaintiff's site. The use of the word "pissedconsumer" would hardly serve as a "promotion" of Fareportal and/or its products. The second factor also weighs in favor of the Defendant.

Fareportal alleges that because the Plaintiff's and Defendant's websites are both located on the World Wide Web, these websites are in "close proximity" to each other. See *Memorandum* at 20. However, the proper inquiry under the Lanham act is not whether the websites are in close proximity to each other but whether the goods and services offered by the Plaintiff at its website are in close proximity to the goods and services offered by the Defendant at its website. Fareportal's website www.cheapoair.com provides travel services over the Internet to its customers. See *Sood Declaration* ¶10. Opinion's website www.pissedconsumer.com provides a forum for consumers to post critical commentaries on various companies, including the Plaintiff. See *Syrov Declaration* at ¶4. Opinion does not offer

any travel-related products or services on its website. Further, it would be immediately apparent to anyone visiting the pissedconsumer.com website (or any of its sub-domains) that it was not the Plaintiff's website due to the differences in content. Thus, the third factor also weighs in favor of the Defendant.

The issue with respect to the fourth factor is whether the two companies are likely to compete directly in the same market. See *Charles of the Ritz Group, Ltd. v. Quality King Distribs., Inc.*, 832 F.2d 1317, 1322 (2d Cir. 1987). Defendant does not operate an online travel agency and does not offer any travel-related products or services on its website or otherwise. It is true that the website www.pissedconsumer.com contains hyperlinks to third-parties' travel-related websites. However, when a consumer clicks on any of the hyperlinks, he/she is taken to a website clearly marked with a third-party name, domain name and often a trademark. Thus, any potential for confusion created by provision of such hyperlinks is mitigated by the lengthy path a consumer must take to reach the travel goods and services offered at such third-parties' websites. Further, the CHEAPOAIR name does not appear anywhere on such third-parties' website. The absence of the CHEAPOAIR name on the third-parties websites lessens the chance that a consumer would be mislead into believing that he/she is visiting the Plaintiff's online travel agency. Therefore, this factor does not weigh in favor of a finding of likelihood of confusion.

The fifth factor is the degree of care typically exercised by purchasers of the products linked to the trademark. Typically, consumers making their travel arrangements and purchasing travel products online are discerning and sophisticated about where they purchase their air tickets, book hotel reservations or make other travel arrangements. Travel products are typically an expensive purchase requiring careful consideration of multiple factors. Unsophisticated travel

purchasers typically delegate making travel arrangements to their travel agents. Therefore, this factor also does not weigh in favor of a finding of likelihood of confusion.

Because of the differences in the services provided by Opinion and Fareportal at their respective websites, the sixth factor is most likely irrelevant here.

With respect to the seventh factor, evidence of actual confusion is not necessary to show a likelihood of confusion, but it is the "best evidence of a likelihood of confusion in the marketplace." *Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 74 (10th Cir. 1958). Plaintiff presented no evidence of actual confusion. Thus, the seventh factor weighs in favor of the Defendant.

Finally, the eighth factor addresses whether the Defendant adopted the marks with the intention of capitalizing on Plaintiff's reputation and goodwill, as well as any customer confusion as to the source of the products. See *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 482-83 (2d Cir. 1996). As explained above, Opinion adapted the use of the name CHEAPOAIR with the intent of providing criticism of Plaintiff's services. Therefore, Opinion's use of the name CHEAPOAIR is a critical parody where the benefit to the Defendant arises from the humorous or critical association and not from consumer confusion as to the source of the marks or goods and services. Therefore, this factor also does not weigh in favor of a finding of likelihood of confusion.

On balance, the eight *Polaroid* factors weigh against a finding of likelihood of confusion. Although there is no likelihood of confusion based on this conventional analysis, the fact that the Defendant's website is a critical parody provides an even more convincing explanation of why consumers are unlikely to be confused.

00956555.1                    14

(d)    **Opinion's Use of the Name CHEAPOAIR**
       **Does Not Create The Initial Interest Confusion**

Fareportal argues that it is likely to prevail under the "initial interest confusion" doctrine.

This relatively new and sporadically applied doctrine holds that "the Lanham Act forbids a

competitor from luring potential customers away from a producer by initially passing off its

goods as those of the producer's, even if confusion as to the source of the goods is dispelled by

the time any sales are consummated." *Dorr-Oliver*, 94 F.3d at 382.  According to Fareportal, this

doctrine requires the Court to compare its name CHEAPOAIR with Opinion's sub-domain name,

cheapoair.pisseconsumer.com, without considering the content of the Opinion's website.

Fareportal argues that some people may go to cheapoair.pisseconsumer.com assuming it is

Fareportal's site, thus giving Opinion an unearned audience – albeit one that quickly disappears

when it realizes it has not reached Fareportal's site.

The few appellate courts that have followed the Ninth Circuit and imposed liability under

this theory for using marks on the Internet have done so only in cases involving a factor utterly

absent here – one business's use of another's mark for its own financial gain.  See, e.g., *PACAAR*

*Inc. v. Telescan Techs., L.L.C.*, 319 F.3d 243, 253 (6th Cir. 2003); *Promatek Indus., Ltd. v.*

*Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002); *Brookfield Communications, Inc. v. West*

*Coast Entm't Corp.*, 174 F.3d 1036, 1055-56 (9th Cir. 1999).  Profiting financially from initial

interest confusion is thus a key element for imposition of liability under this theory.  When an

alleged infringer does not compete with the mark holder for sales, "some initial confusion will

not likely facilitate free riding on the goodwill of another mark, or otherwise harm the user

claiming infringement. Where confusion has little or no meaningful effect in the marketplace, it

is of little or no consequence in our analysis." *Checkpoint Sys. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 296-97 (3d. Cir. 2001).

This critical element – use of another firm's mark to capture the mark holder's customers and profits – simply does not exist when the alleged infringer establishes a gripe site that criticizes the mark holder. See Hannibal Travis, *The Battle For Mindshare: The Emerging Consensus that the First Amendment Protects Corporate Criticism and Parody on the Internet*, 10 Va. J.L. & Tech. 3, 85 (Winter 2005) ("The premise of the 'initial interest' confusion cases is that by using the plaintiff's trademark to divert its customers, the defendant is engaging in the old 'bait and switch.' But because . . . Internet users who find [gripe sites] are not sold anything, the mark may be the 'bait,' but there is simply no 'switch.'") (citations omitted).  Applying the initial interest confusion theory to the Opinion's gripe site would enable Fareportal and other mark holders to insulate themselves from criticism – or at least to minimize access to it.  Fareportal cannot use Lanham Act to shield itself from criticism by forbidding the use of its name in commentaries critical of its conduct. See, *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 33 (1st Cir. 1987). "Just because speech is critical of a corporation and its business practices is not a sufficient reason to enjoin the speech." *Id.*  In sum, even if the Court were to accept the initial interest confusion theory, that theory would not apply in the case at hand. Rather, to determine whether a likelihood of confusion exists as to the source of a gripe site like that at issue in this case, a court must look not only to the allegedly infringing domain name, but also to the underlying content of the website. When it is done here, it is clear, as explained above, that no likelihood of confusion exists.

### 2. Opinion Has Not Diluted Any Trademark
### Rights in the Name CHEAPOAIR

The Federal Trademark Dilution Act ("FTDA") allows the "owner of a famous mark" to

obtain "an injunction against another person's commercial use in commerce of a mark or trade

name . . . ." *15 U.S.C. § 1125(c)(1)*. While the meaning of the term "commercial use in

commerce" is not entirely clear, courts have interpreted the language to be roughly analogous to

the "in connection with" sale of goods and services requirement of the infringement statute.  See

*Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) ("Although this statutory

language is ungainly, its meaning seems clear: It refers to a use of a famous and distinctive mark

to sell goods other than those produced or authorized by the mark's owner."); see also *Huthwaite,*

*Inc. v. Sunrise Assisted Living, Inc.*, 261 F. Supp. 2d 502, 517 (E.D. Va. 2003) (holding that the

commercial use requirement of the FTDA is "virtually synonymous with the 'in connection with

the sale, offering for sale, distribution, or advertising of goods and services' requirement" of the

Lanham Act).  Moreover, FTDA explicitly states that the "noncommercial use of a mark" is not

actionable. 15 U.S.C. 1125(c)(4).  Congress explained that this language was added to

"adequately address legitimate First Amendment concerns," H.R. Rep. No. 104-374, at 4 (1995),

*reprinted in* 1995 U.S.C.C.A.N. 1029, 1031, and "incorporated the concept of 'commercial'

speech from the 'commercial speech' doctrine." *Id.* at 8, *reprinted in* 1995 U.S.C.C.A.N. at 1035;

*cf. Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 554, 150 L. Ed. 2d 532, 121 S. Ct. 2404 (2001)

(defining commercial  speech as "speech proposing a commercial transaction") (internal

quotation marks and citation omitted). The legislature believed this provision necessary to

"protect the rights of Internet users and the interests of all Americans in free speech and protected

uses of trademarked names for such things as parody, comment, criticism, comparative advertising, news reporting, etc." S. Rep. No. 106-140 (1999), 1999 WL 594571, at *8.

As explained above, with respect to the trademark infringement analysis, Opinion's use of the name CHEAPOAIR does not raise to the standard of the "commercial use" within the meaning of the FTDA. Accordingly, Fareportal is not likely to succeed on the merits of its trademark dilution claim.

Further, FTDA applies only to mark that are distinctive and famous. 15 U.S.C. §1125 (c)(1). As explained above, the name CHEAPOAIR is not a famous or a distinctive mark either inherently or through an acquired secondary meaning.

Dilution can involve either blurring or tarnishment. Blurring occurs "where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiffs' product." *Deere & Co. v. MTD Prods.*, 41 F.3d 39, 43 (2d Cir. 1994). "To determine the likelihood of blurring, we have looked to six factors, including: (i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; and (vi) the renown of the junior mark." *N.Y. Stock Exch.*, 293 F.3d at 558. Tarnishment, on the other hand, occurs where a trademark is "linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiffs' unrelated goods." *Id.* (citation omitted).

Here, Fareportal advances the blurring theory of dilution. The relevant analysis has been completed in the previous discussion of the Polaroid factors. For the reasons discussed in that

section, Fareportal cannot succeed on the merits of its federal dilution claim.

### 3. Opinion's Use of the Name CHEAPOAIR Did Not Violate the Anti-Cybersquatting Protection Act

Congress enacted the Anti-Cybersquatting Protection Act ("ACPA"), *15 U.S.C. §*
*1125(d)*, to address "a new form of piracy on the Internet caused by acts of 'cybersquatting,'
which refers to the deliberate, bad-faith, and abusive registration of Internet domain names in
violation of the rights of trademark owners." S. Rep. No. 106-140, at 4 (1999). The ACPA
provides for liability if a person registers, traffics in, or uses a domain name that is identical or
confusingly similar to a distinctive mark, with a bad faith intent to profit from that mark. *15*
*U.S.C. § 1125(d)(1)(A)*.

To prevail on the cybersquatting claim, Plaintiff must show (1) that its trademark was
distinctive at the time of registration of the domain name, (2) that the domain name *registered* by
the Defendant is identical or confusingly similar to the Plaintiff's trademark, and (3) that the
Defendant used or registered the domain name with a bad faith intent to profit. *Utah Lighthouse*
*Ministry v. Foundation For Apologetic Information And Research*, 527 F.3d 1045, 2008 U.S.
App. LEXIS 11523, *28 (emphasis added).

As discussed in the trademark infringement section above, Plaintiff cannot show that the
name CHEAPOAIR is a distinctive trademark. Moreover, ACPA is clear that it concerns only
with *registered* domain names. In the present case, Opinion has only registered domain name
pissedconsumer.com. Cheapoair.pissedconsumer.com is a sub-domain and, as such, cannot be a
registered domain name. As explained above, the automatically created sub-domains are not
registrable.

As to the third element, Defendant does not use its sub-domains with a bad faith intent to profit. The ACPA enumerates nine nonexclusive factors to assist the court in determining whether the use of a trademark involves a bad faith intent to profit. See *15 U.S.C. § 1125(d)(1)(B)(i)*. It is not necessary to evaluate all of the factors because several of the factors readily defeat an inference that the Defendant intended to profit by using sub-domains similar to Plaintiff's name CHEAPOAIR. The quintessential example of a bad faith intent to profit is when a defendant purchases a domain name very similar to the trademark and then offers to sell the name to the trademark owner at an extortionate price. A defendant could also intend to profit by diverting customers from the website of the trademark owner to the defendant's own website, where those consumers would purchase the defendant's products or services instead of the trademark owner's. As explained above in more detail, neither of these purposes is evident here.

One factor is the domain name registrant's "bona fide noncommercial or fair use of the mark in a site accessible under the domain name." *15 U.S.C. § 1125(d)(1)(B)(i)(IV)*. Several courts held that a website that critiques a product and uses the product's trademark as the website's domain name may be a fair use. See *Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 809 (6th Cir. 2004) (consumer registering domain name "lucasnursery.com" and complaining about nursery's work was not liable under ACPA); *TMI, Inc. v. Maxwell*, 368 F.3d 433 (5th Cir. 2004) (holding that a website with the purpose of informing other consumers did not create the harm the ACPA intended to eliminate); *Mayflower Transit, L.L.C. v Prince*, 314 F. Supp. 2d 362 (D.N.J. 2004) (finding no ACPA liability where Defendant registered "mayflowervanline.com," since the totality of circumstances demonstrated that registrant's motive was to express dissatisfaction in doing business with the mark's owner). Because

00956555.1                                    20

Defendant's sub-domain cheapoair.pissedconsumer.com offers critique of the Plaintiff's services and lacks an overt commercial purpose, it is similar to these consumer commentaries, and under the circumstances of this case, constitutes fair use.

Another factor is the defendant's intent to divert consumers to a website that "could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site." *15 U.S.C. § 1125(d)(1)(B)(i)(V)*. As explained above, Opinion's sub-domain cheapoair.pissedconsumer.com does not create a likelihood of confusion as to source or affiliation. Accordingly, Opinion has not engaged in the type of conduct, i.e., "creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site," described as an indicator of a bad faith intent to profit in the statute. 15 U.S.C. §1125(d)(1)(B)(i)(V).

Finally, the ACPA contains a "safe harbor" provision, which precludes a finding of bad faith intent if "the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." *15 U.S.C. § 1125(d)(1)(B)(ii)*. Court in *Utah Lighthouse* determined that where the offending website was a parody, owner of the website could have reasonably believed that use of the domain names was legal. See, 2008 U.S. App. LEXIS 11523, *32. Similarly, Opinion's use of the name CHEAPOAIR in its third level domain names is a fair use critical parody and does not constitute a use in bad faith.

**B.    Fareportal Is Not Being Irreparably Harmed by Opinion's Use of the Name CHEAPOAIR**

As explained above, Fareportal does not own any protectable right in the name CHEAPOAIR either under federal or state statute or under common law. Therefore, Fareportal cannot suffer any irreparable harm from Opinion's use of the name CHEAPOAIR. As further discussed above, Opinion's use of the name CHEAPOAIR is not in connection with any goods or services, does not create a likelihood of confusion as to the source and, therefore, cannot cause Plaintiff an irreparable harm.

## III.  FAREPORTAL IS NOT ENTITLED TO THE PRELIMINARY INJUNCTION UNDER ITS NEW YORK GBL CLAIM

### A.  Plaintiff is not Likely to Prevail on the Merits of its New York GBL Section 360-L Claim

Section 360-L of the New York General Business law provides:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

N.Y. Gen. Bus. Law §360-l.

"New York law accords protection against dilution to marks that are distinctive as a result of acquired secondary meaning as well as to those that are inherently distinctive." *N.Y. Stock Exch., Inc. v. New York, New York Hotel, LLC*, 293 F.3d 550, 557 (2d Cir.2002). As explained above, the name CHEAPOAIR is not a distinctive mark either inherently or through an acquired secondary meaning.

Similarly to its federal trademark dilution claim, Fareportal presses the blurring theory of

dilution. As with its federal trademark dilution claim, the relevant analysis has been covered in the previous discussion of the Polaroid factors. For the reasons discussed in that section, Fareportal cannot succeed on the merits of its New York dilution claim.

## IV. BALANCE OF THE HARDSHIPS IS IN FAVOR OF THE DEFENDANT

Finally, the balance of hardships here tips decidedly in Defendant's favor. "It must be shown that the irreparable injury to be sustained ... is more burdensome [to the movant] than the harm caused to the [non-movant] through imposition of the injunction." *McLaughlin, supra* citing *Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.* 70 A.D. 2d 1021, 1022, 418 N.Y.S. 2d 216 (3d Dep't. 1979). However, as shown above, Plaintiff has suffered no irreparable harm from the Opinion's use of the name CHEAPOAIR. Balanced against the absence of the irreparable harm to Fareportal is the ability of consumers to conveniently express criticism of Plaintiff's services. Further, granting the preliminary injunction will require the Defendant to invest a substantial amount of money in reprogramming its website. Accordingly, the balance of harships tips in the Defendant's favor.

**CONCLUSION**

For the above stated reasons, Plaintiff's Motion seeking a preliminary injunction should

be denied.

Respectfully submitted,

Dated:        August 15, 2008
              New York, New York

OPINION CORP., by its attorneys

_Anna Vishev_

Anna Vishev (AV 3601)
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York  10036-8403
Tel:  (212) 382-0700

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing **MEMORANDUM OF LAW IN OPPOSITION OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** was served upon counsel for Plaintiff by ECF and First Class mail, postage prepaid, on this 15th day of August, 2008, addressed as follows:

Tedd Kessler, Esq.
Law Office of Tedd Kessler, P.C.
302 Fifth Avenue, 8th Floor
New York, NY 10001

_____
Anna Vishev

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAREPORTAL, INC. D/B/A CHEAPOAIR,

       Plaintiff,

      v.

OPINION CORP. D/B/A PISSEDCONSUMER,

      Defendant.

Civil Action No. 08 CV 05964 (DLC)

**LISTING OF EXHIBITS**

**EXHIBIT A** - Declaration of Alex Syrov

**EXHIBIT B** - Printout of sample pages from pissedconsumer.com

**EXHIBIT C** - Printout of the Trademark Office record for Application Serial No. 77/422393

**EXHIBIT D** - Printout of the Trademark Office record for Application Serial No. 78/740147

**EXHIBIT E** - Printout of a page from pissedconsumer.com

**EXHIBIT F** - SubDomain - The Third Level Domain

00957676.1

# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAREPORTAL, INC. D/B/A CHEAPOAIR, | Civil Action No. 08 CV 05964 (DLC) |
| Plaintiff, | |
| v. | **DECLARATION OF ALEX SYROV** |
| OPINION CORP. D/B/A PISSEDCONSUMER, | |
| Defendant. | |

I, ALEX SYROV, under penalty of perjury, hereby declare as follows:

1.     I am the Presedent of Opinion Corp., the Defendant in the above-named action.

2.     Opinion Corp. is a New York corporation.

3.     Opinion Corp. owns and operates the website www.pissedconsumer.com. Domain name pissedconsumer.com is registered with GoDaddy.com.

4.     www.pissedconsumer.com provides a forum for consumers to post their opinions, complaints and other comments with respect to various product and/or service providers.

5.     System operating pissedconsumer.com constantly checks interest and volume of

00957503.1

readers for each posted consumer report. Once a particular report generates a predetermined number of hits, system uses the information provided by the consumer to create a sub-domain.

6.     Sub-domains of the pissedconsumer.com are not registered and exist only in association with the domain name.

7.     Opinion Corp. generally uses three groups of meta tags on its website: Title Meta Tags, Description Meta Tags, and Keywords Meta Tags. When a consumer files a report, the system summarizes the report and places this summary as a Description Meta Tag. A third-party Application Programming Interface ("API") is used to extract keywords from a consumer's report for the Keywords Meta Tags. A Title Meta Tag is generated directly from the title provided by the consumer.

8.     There are two types of in-text hyperlinks employed at individual pages of pissedconsumer.com: hyperlinks to third-parties' websites and hyperlinks to other pages at pissedconsumer.com. Opinion Corp. utilizes services of a third-party advertizing agency to generate hyperlinks to websites of others.

9.     When a page viewer points its cursor to a hyperlink connecting to a third-party website, an informational pop-up message appears on the screen informing the viewer about where the link is connecting to. The viewer may then click on the hyperlink and get redirected to the advertized website.

10.     Each pop-up message is labeled with the advertized party's name.

11.     Opinion Corp. does not sell, provide or offer any travel-related products or services either at pissedconsumer.com or otherwise.

00957503.1

12.    The foregoing is true and correct to the best of my personal knowledge,

information and belief.

Dated: New York, New York
       August 15, 2008

_____
Alex Syrov

00957503.1

# EXHIBIT B



Pissed Consumer *I'm Pissed*

| Submit complaint | Consumer Tips | About Us

Username
Password
Remember Me   login
Lost Password?
No account yet? Register

Cheapest Air Tickets
Save 85% Off Air Tickets With Our Cheap Wholesale Airfares. Compare!
Travelation.com

Cheapest Flights
Save On Your Tickets To Cheapest Airfare Search Engine at Travelzoo®
www.travelzoo.com

Cheap Airline Tickets
ORBITZ: The Faster, Easier Way to Find The Low Fares You Want!
www.ORBITZ.com

Ads by Google


Bookmark Us
Post a Complaint

search

Home
Add a complaint
Latest Reviews
Consumer Reports
Company Reviews
Consumer Forum
Consumer Advocacy
Sample Complaint Letter
Affiliates

Home » Consumer Reviews » TRAVEL » CheapoAir has truly horrible service

## CheapoAir has truly horrible service        Comments

Ads by Google   Buy Air Ticket   Air India Fare   India Airfare   Ticket Booking

cheapoair.com complaint by Kjboyd                              May 21, 2008

My wife booked tickets through this dismal outfit. She didn't find a space on the poorly-designed web form to indicate a child. Also, unlike every other online agency, there is no way to select seats. Since she was concerned that our 7-year-old would end up being placed apart from us, she called the company to get that corrected. The rep cancelled the reservations and remade them, informing my wife that it would cost $50 for the change (which should have been unnecessary and, if necessary, utterly trivial). It took two hours for this piece of magic to happen.

Since **CheapoAir** is such a low-quality firm, the credit card company flagged the $5000 charge as 'suspicious' and declined it. Upon learning of this, my wife contacted the credit card company to resolve the issue. She then attempted to contact **CheapoAir** again. After being put on hold for 45 minutes, she finally reached a rep. He asked for the booking number and then announced that he had a computer problem and asked her to call back in 10 minutes. (Huh? You ask your customers to call back?) In addition, **CheapoAir** claims they will charge $25 a ticket for the fact that the credit card company declined their suspicious activity.

Now we are hesitant to book through a more reliable company, since we don't know that **CheapoAir** won't submit the charge again. Trying to call results in long delays and being told to call back when you finally reach a human being. I am thoroughly disgusted with **CheapoAir**.

Write your Review »

Cheap Airline Tickets
ORBITZ: The Faster, Easier Way to Find The Low Fares You Want!
www.ORBITZ.com

Air Ticket
Book with Expedia for Cheap 2007 Airfares & Ticket Prices Guaranteed
www.Expedia.com

Air Ticket
Featuring hot holiday travel deals on flights & hotels available now!
www.CheapFlights.com/Tickets

Never Fly Coach Again
Exclusive International Class Fares. Cook American Express
cookamerican.travel

Ads by Google

More cheapoair.com Reviews

AUCTIONS
AUTO
COMPUTER
CONS
CONSUMER
DELIVERY
EDUCATION
FINANCE
FOOD
GOVERNMENT
HEALTH
OTHER
SERVICE
TRAVEL


WIN A CAR or $35000
Click Here
For Your Chance to Win a Porsche
*Participation Required
A Guaranteed Winner Every Month!

Ads by Google

Air Ticket
The latest deals on airline tickets and hotel reservations available.
www.cheapflights.com/Tickets

Compare Ticket Prices
The Cheapest Airline Tickets on the web. Search, Compare & Save Big!
www.TripMama.com

International Air Ticket
Find Great Deals & Compare Prices On Airfare Sales At MyTravelGuide!
www.MyTravelGuide.com

Find Cheap&Best Flights
Last Minute Offers From Airlines Find Cheap Airline Tickets Anywhere
www.girlgonewildynow.info

Cheapest Flight Tickets
Search Multiple Sites for Flights Bookingwiz EasySearch®.Save Big!
BookingWiz.com

**Recently Discussed**
- GeIL USA — GeIL Memory support stinks and the company scams its customers!
- Barclays Bank — Barclays/Juniper Air Tran Visa Card
- Global Replica — GlobalReplica has gone straight!
- Cell Digital — Cell-digital.com frauds and liars
- GE CAPITAL — GE CAPITAL CONS CARDCO complaints - FINANCE-Credit Cards
- Saxon Mortgage — Saxon Mortgage aka Deutsche Bank
- Orbtrongold — Shipper only paid for sum of the cost of freight?

- Girls Gone Wild
- Watchersweb
- iPostNaked
- Allied Interstate
- PrivacyMatters
- Primerica
- Expedia
- Iberostar
- Tiran Zaken
- Raymore and Flanigan



**Hot Topics**

Toy Haulel Manufacturers  Travel Complaints  Quaran Motix
Hotel  Adobe Clumblank Lettel  White Oak Press  Special T
Travel  Traverse Advantage  Excelsior  Bluegreen Resort
**Bluegreen Resorts**  Paderson King Of Prussid  Rio
Renatos  Grand Chonne Travel  Oxford House  Shopper
Debberts  Summerloun Resorts  Summerbay Resort  Travelcpdrtty
Complaints  Travel Advantage Network  Betalli  Bafria Toyota
Luminie Toylote  Wild Girl  Sauna Solutions  Staevandoyktrp
Tag Properties  Grania Appliances  Direct Buy Complaints
**Midland Funding Llc**  Blue Green
Resorts  Vispren Strips  Find Line Insurances  Cobcoxs
Amaluvinamlash  Customer Testimonials  Ticketastoryway
Prayz  Tickets My Way Complaints

**Phendimetrazine.com**
Phendimetrazine diet pill Learn where to buy online

**Fitness Info**
Get Info on Fitness from 14 search engines in 1.

**Fitnes**
Top Fitnes Offers. Worth seeing! Check The Site for Fitnes

**Fitness**
Find fitness, Review & Compare!

- Great service on Refunded Flight.
- CheapOair fraudulent practices - cheated the wrong consumer ...A LAWYER
- Unaccompanied Minor
- Excellent prices and service
- Chepoair ripp off!

 **PISSED CONSUMER**   Discuss **cheapoair.com News** on our forums

**Our Friends**

**Consumer Reports** is the most famous consumer product reviews and rating agency.

This Consumer Blog offers alternative look at **Consumer Product Reviews**

**Complaints:** Learn how to write proper complaint letters that get the results

**Featured Complaints**

Linens N Things
Beseda Flooring
U Store It
Wells Fargo Financial
Silver Auctions
Junior Gym
Knights Automotive
Walmart
Credit Solutions
Direct Tv
Wells Fargo
Kin Motors
Service Protection Direct

Quote this article on your site | Views: 436

Comments (1)   RSS

**1. Written by Customer Support, on 21-05-2008 16:50**

This is in regards to Mr. Boyds, posting. I have read over your file and our website is clearly marked for selecting a Child, Infant, and Senior citizen if needed. So this is clearly an oversite while the booking process took place. I do see that your wife called back to advise that she booked the child as an adult, but nothing was ever mentioned about seat assignments and that she was concerned about this, nor did she ask to have seats assigned. We did try and run the credit card and it was declined, this is not the fault of our agency that your credit card company has restrictions. We spoke with you at 10:28am and advised us to rerun the ticket, and you also called back at 10:45am, so the long hold times you claim I don't see that, for all transaction done on a reservation, puts a time stamp on the file..

Your tickets have been issued, and your child received a discounted fare. My conclusion on this is that the blame is being placed on Cheapoair.com for an error made by the person who made the reservation online resulting in fees that they felt they did not need to pay.

Report
**"**

| Comments on CheapoAir has truly horrible service |
| --- |

Consumer Forum is another great place to discuss consumer concerns **NOT RELATED** to this article.

Name:

Comment:

● ● ● ● ●
● ● ● ● ●
● ● ● ●

Code:*    55210

☐ I wish to be contacted by email regarding additional comments

< Prev          Next >



**Pissed Consumer**
*I'm Pissed*

Submit complaint | Consumer Tips | About Us

Username
Password
□ Remember Me          login
Lost Password?
No account yet? Register

**Bookmark Us**

**Post a Complaint**

Air Ticket Booking
Find Flight Deals on ORBITZ. Low Fares Made Easy.
Book Now!
www.ORBITZ.com

Cheap Airline Tickets
Compare 10 Major Airfare Sites. All Airlines. Save
Cash Now!
ainum.com

Discount Airline Tickets
Compare Rates From All Major Travel Sites - Fast &
Easy Ticket Search
BookingBuddy.com

Ads by Google

Home » Consumer Reviews » TRAVEL » Cheap O Air

Cheap O Air                                                     ☐ Comments

Ads by Google    Buy Air Ticket    India Air Fare    Air Travels    Air Package

**Cheapair complaint by Barbie**                              Aug 5, 2008

Home
Add a complaint
Latest Reviews
Consumer Reports
Company Reviews
Consumer Forum
Consumer Advocacy
Sample Complaint Letter
Affiliates

I should have read the
reviews before booking
with **Cheap** O Air. They
are not **cheap**.

Write your Review »



Ads by Google

Air Fares
Save 85% Off Your Air Fares
With Our Wholesale Airline
Tickets!
Traveluxon.com

Find Low Air Fares.
Save Up To 70% On Discount
Flights! Enter Your Travel Details
Today.
www.ShermansTravel.com

Air Ticket
Compare & get the best flight
deals available online today.
www.CheapFlights.com/Tickets

Samoa Flight Deals
Everyday low fares just released.
Book now for the most date
options!
www.airnewzealand.com

1st Class Upgrade Secrets
Upgrade Secrets From The
Experts Affordable First Class
Travel
FirstClassFlyer.com

I booked 2 tickets for
Thanksgiving. $177.19
plus $105.90 for Taxes &
fees, total $283.00 per
ticket.

Went on Delta web site
and the price for the same
flight was $249.00 per ticket.

I called customer service of **Cheap** O Air and was informed that an
additional $48.00 would be charged to my account for booking
fees...total of each ticket $307.00..$58.00 more than Delta.

Stay away from this travel service. They are not **cheap**...They are a rip
off! I will be contacting American Express and putting this in disputer
plus a letter to the Beter Business Bureau.

More Cheapair Reviews



**Instant Personal Loans**
No Credit Check - Apply Online 98% Approval Rate, Bad
Credit OK

**Phendimetrazine.com**
Phendimetrazine diet pill Learn where to buy online

**Medicine Info**
Get Info on Medicine from 14 search engines in 1.

**U.S. Online Pharmacy**
Order from a trusted online pharmacy. Large selection
of medications. Overnight shipping. Tramadol, ..

•  Cheapoair changed more than requested
•  Don't use cheapo air!!!!
•  Overcharged and will not refund or respond
•  Cheapoair.com has the worst customer service in town and will not backup travel that are booked
•  CheapOAir have the WORST customer support and policies

**This is**
**not a joke:**
**Congratulations**
**You Won!**

Click here to claim

Cancel

Recently Discussed

•  Gel1 USA
Gel1 Memory support stinks and the company
scams its customers!

•  Barclays Bank
Barclays/Juniper Air Tran Visa Card

•  Global Replica
GlobalReplica has gone straight!

•  Cell Digital
Cell-digital.com frauds and liars

•  GE Capital
GE CAPITAL CONS CARDCO complaints -
FINANCE-Credit Cards

•  Saxon Mortgage
Saxon Mortgage aka Deutsche Bank

•  Orbtrongold
Shipper only paid for sum of the cost of freight?

☐ AUCTIONS
⊞☐ AUTO
⊞☐ COMPUTER
⊞☐ CONS
⊞☐ CONSUMER
⊞☐ DELIVERY
⊞☐ EDUCATION
⊞☐ FINANCE
☐ FOOD
☐ GOVERNMENT
⊞☐ HEALTH
☐ OTHER
⊞☐ SERVICE
⊞☐ TRAVEL

Discuss
**Cheapoair News**

•  Girls Gone Wild
•  Watchersweb
•  iPostNaked
•  Allied Interstate
•  PrivacyMatters
•  Primerica
•  Expedia
•  Iberostar
•  Tiran Zaken
•  Raymore and Flanigan

 on our forums

**Our Friends**

**Consumer Reports** is the most famous consumer product reviews and rating agency.

This Consumer Blog offers alternative look at **Consumer Product Reviews**

**Complaints:** Learn how to write proper complaint letters that get the results

**Featured Complaints**

Linens N Things

Beaulo Flooring

U Store It

Wells Fargo Financial

Silver Auctions

Junior Gym

Knights Automotive

Walmart

Credit Solutions

Direct Tv

Wells Fargo

Kia Motors

Service Protection Direct

**Hot Topics**

Travelers Advantage  **Bluegreen Resorts**  Airline
Complaints Letter  White Oak Press  Summerbay Resort
Special T Travel  Queen Mary Hotel  Bluegreen Resort
Silverleaf Resorts  Rci Reviews  Amtrak Auto Train  Vacation
Travel Club  Summerbay Resorts  Timeshare Complaints
**Bluegreen**  Cheapflights.com  Europcar  Cymba  Fleetwood
Rci Forums  Does Working Them Work  Booster Nice  Secret
Scouts Bcame  Dozenlegergenereviews  Vanguard Group Blog
Fred Loya Insurance  Andre Edwards  Les Schwab
Complaints  Homeservice  Palate Prevails  Audibel  Fastbid2
Roms  Pumppers Trust  Discountelectron.com  Image
Dynamics  **Home Design**  Myrce  Reviews On Ashworth
Universals  Ticketanyway Refund

🌐 Quote this article on your site | Views: 67

💬💬 Comments (1)    RSS📶

1. Written by **Cheapair Customer Support**, on 06-08-2008 15:02

Barbie, I have responded to your feedback email you had sent. I verified your charges, and you paid the exact airfare as Delta airlines $249.00 for your ticket. Yes we did charge a service fee, but it was 24.00 per ticket and there is two of you, that totals $48.00. So that is the only difference in the cost of the tickets, Cheapoair.com clearly states on our website that we charge upto 35.00 service fee for the processing and automation of your tickets. We do not hide this from our customers. If you where to contact the airline directly and speak with an agent, they also charge 25.00 per reservation, only is it free if you book through their website. Most online travel companies, and your local travel agents charge service fees for the handling of reservations.

I do apologize that you over looked the additional cost, but that is not the fault of Cheapoair.com. and no way does it make us a "rip off" for we do offer our customers great savings!

randrews

cheapoair.com

866-636-9088

Report

99

**Comments on Cheap O Air**

Consumer Forum is another great place to discuss consumer concerns **NOT RELATED** to this article.

Name:

Comment:

⚫⚫⚫⚫⚫
⚫⚫⚫⚫⚫
⚫ ⚫ ⚫ ⚫⚫

Code:*    94004

☐ I wish to be contacted by email regarding additional comments

Send

< Prev    Next >

Blog | Contact Us | Search | News Feeds | Consumer Jokes | Government Resources | Privacy Policy

Copyright © 2006 PissedConsumer.com



**Pissed Consumer** *I'm Pissed*

Submit complaint  |  Consumer Tips  |  About Us

Username
Password
Remember Me    login
Lost Password?
No account yet? Register



Bookmark Us

Post a Complaint

"2008 Anti-Aging Awards"
Over 200 Wrinkle Creams Were Tested Find Out
Which Cream Took The Award
AmericanAntiAgingAssociation.com

Sleep Number Bed Reviews
Want another opinion? Read recent Reviews from
Sleep Number owners.
www.SelectComfort.com

File Your Complaint Here
Dont get mad, Get Even! - File A Consumer Complaint
and be Heard
www.iripoff.com

Ads by Google

search

Home
Add a complaint
Latest Reviews
Consumer Reports
Company Reviews
Consumer Forum
Consumer Advocacy
Sample Complaint Letter
Affiliates

Ads by Google

Fat Loss Guaranteed
Don't Get Scammed! Review
The Latest Fat Loss Products
www.fatlossproductreview.info

Consumer Reviews
Find Consumer Reviews TVs at
Great Prices.
www.Pronto.com

Bmw 325i Consumer Reviews
Compare BMW 128 Pricing,
Specs & Price Quotes at Kelley
Blue Book.
www.kbb.com

The TrimSpa Report
Is TrimSpa the #1 Diet Pill?
2008s Top 3 Diet Pills
Unmasked!
OxiDietSolutions.com/TrimSpa

NordicTrack Ellipticals
Get Customizable & Guided
Workouts. Choose From Many
Powerful Machines!
www.NordicTrack.com

**Recently Discussed**

• WalkFit America
  I was hung up on by customer service member.
• GeTL USA
  GeTL Memory support stinks and the company
  scams its customers!
• Barclays Bank
  Barclays/Juniper Air Tran Visa Card
• Global Replica
  GlobalReplica has gone straight!
• Cell Digital
  Cell-digital.com frauds and liars
• GE Capital
  GE CAPITAL coins CARDCO complaints -
  FINANCE-Credit Cards
• Saxon Mortgage
  Saxon Mortgage aka Deutsche Bank

Home » Consumer Reviews » TRAVEL » CheapOair fraudulent practices - cheated the wrong costumer...A LAWYER.

## CheapOair fraudulent practices - cheated the wrong costumer...A LAWYER.

🗨 Comments

cheapoair.com complaint by JurisDoctor                          Aug 1, 2008

After spending half the day on the phone x a few hours per day in the last week trying to get confirmation for a flight - an email, several phone conversations and an itinerary for travel, one would expect that a ticket for a seat on an airline is available and ready and waiting for you, right. ABSOLUTELY NOT!

Write your Review »

The Ultimate Complaint
When they just won't listen. Effective. Easy
ConsumerXchange.org

Consumer Complaints
Find great deals and save! Compare products, prices & stores
www.Snapping.com

File a Complaint
Learn how to file a complaint about your bank or another lender
AmericansForFairnessInLending.org

Consumer Complaints
Quickly search merchant products. 100,000 Stores. Deals. Reviews.
shopping.yahoo.com

Ads by Google

How absolutely frustrating when you show up at the airport, get your bags checked on only to be told that you have a "Reservation, but it has not been ticketed." What this simply means is they didn't pay the airline for your ticket that they "confirmed" they had for you. Your checked bag leaves while you are left behind wondering what happened.

So, you spend several hours being shuffled back and forth between Cheapoair's HORRIBLE customer service and US Air representatives on the phone (which happens to have GREAT customer service comparatively). With each company blaming each other it is hard to determine who to point the finger at but alas, the winner of the WORST TRAVEL AGENCY IN THE WORLD belongs to cheapoair.com. Not only did they not book the flight, but they led us to believe that it was confirmed and all that needed to be done was show up.

We had to buy a last minute ticket (which we all know costs an arm and a leg) that we wouldn't have had to if they had not misled us in the first place.

Unfortunately for them, we are from a family of lawyers who loves to fight for justice in every aspect of life. We do not support those who lie, cheat or steal and that is exactly the motto of their company as demonstrated by their less than professional business etiquette. Even if the mistake was an oversight it would have been more acceptable had the customer service representatives been more understanding and accommodating rather than sour and audibly annoyed.

I encourage any and all who have been grieved by cheapoair to act on it. I am personally peeved and have a mission to use the legal system



🞩
AUCTIONS
AUTO
COMPUTER
CONS
CONSUMER
DELIVERY
EDUCATION
FINANCE
FOOD
GOVERNMENT
HEALTH
OTHER
SERVICE
TRAVEL

2008 #1 Winner

X

THIS IS
NOT A
JOKE!

YOU
ARE
THE
10,000th
VISITOR

Click here to claim

© LM Networks 2008

• Girls Gone Wild
• Watchersweb
• iPostNaked
• Allied Interstate
• PrivacyMatters
• Primerica
• Expedia
• Iberostar
• Tiran Zaken
• Raymore and Flanigan

**Hot Topics**

Special T Travel  Summerlida Resorts  Adine Consuiant Letter
Toy House Manufacturers  Gilestrad Resorts  Grand Ocene
Travel  Bluegreen Resort  Eurostar  Adribia Auto Train  Rci
Reviews  Cheapoair Review  Radisson King Of Prussia  Queen
Mary Hotel  Dollars House  **Bluegreen Resorts**
Summerlida Resort  Cheapofygracins  Rent A Center  Jeff
Hossing  Turbo Jam  Miracle blade  Classic Closeouts Fraud
Internet Savelsway  Myranainghost  **Riddex**  Gerns
**Pissed Consumer**  Communications Publishing  Ezaver
Bones Online Brum  Enterprise Car Sales  Scarfallawason
**Furniture Reviews**  Copesnd Review  Chorf Maddavist Kne
Courses  Hypoled Lending Scam Fraud  Reviews Of Kymani
Child Care Ratings  Homeste Window Complaints  Komero Body
Shaper

to work through these unfortunate and unnecessary situations. If you would like to help out, please send a brief description of the incident to the email address of This e-mail address is being protected from spam bots, you need JavaScript enabled to view it . Don't worry...I am not spammer and if you're unsure, please open a new email account to pay caution. Bottom line - I KNOW CHEAPOAIR.COM to practice in misleading and **fraudulent practices** and would like to stop their abuse of unsuspecting future customers. What they have done is absolutely unacceptable.

-A disgruntled customer

**Our Friends**

**Consumer Reports** is the most famous consumer product reviews and rating agency.

This Consumer Blog offers alternative look at **Consumer Product Reviews**

**Complaints**: Learn how to write proper complaint letters that get the results

**Featured Complaints**

Linens N Things
Beseda Flooring
U Store It
Wells Fargo Financial
Silver Auctions
Junior Gym
Knights Automotive
Walmart
Credit Solutions
Direct Tv
Wells Fargo
Kia Motors
Service Protection Direct

More cheapoair.com Reviews



- Great service on Refunded Flight,
- Unaccompanied Minor
- Excellent prices and service
- Cheapoair ripp off!
- CheapoAir has truly horrible service

Discuss **cheapoair.com News** on our forums

Quote this article on your site / Views: 53

Comments (1)

1. Written by **Email me at IhatecheapOAir @ g**, on 01-08-2008 13:46

Since apparently my email will not show up, please refer to and modify the email line below to send any correspondence.

Email me at IhatecheapOAir @ gmail dot com

Report

Comments on **CheapOair fraudulent practices - cheated the wrong costumer...A LAWYER.**

Consumer Forum is another great place to discuss consumer concerns **NOT RELATED** to this article.

Name:

Comment:

Code:*    79371

☐ I wish to be contacted by email regarding additional comments

Pissed Consumer - CheapOair fraudulent practices - cheated the wrong costumer. A L A    Page 3 of 3

Case 1:08-cv-05964-DLC    Document 20    Filed 08/15/2008    Page 46 of 65

< Prev          Next >

Blog | Contact Us | Search | News Feeds | Consumer Jokes | Goverment Resources | Privacy Policy

Copyright © 2006 PissedConsumer.com

# EXHIBIT C

**Thank you for your request. Here are the latest results from the TARR web server.**

This page was generated by the TARR system on 2008-08-15 16:45:58 ET

**Serial Number:** 77422393 Assignment Information        Trademark Document Retrieval

**Registration Number:** (NOT AVAILABLE)

**Mark**



**(words only):** CHEAPOAIR.COM THE ONLY WAY TO GO!!

**Standard Character claim:** No

**Current Status:** Applicant's response to a non-FINAL office action has been entered in application.

**Date of Status:** 2008-07-11

**Filing Date:** 2008-03-14

**Filed as TEAS Plus Application:** Yes

**Currently TEAS Plus Application:** Yes

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 107

**Attorney Assigned:**
SOMERVILLE ARETHA CHARESE

**Current Location:** L70 -TMEG Law Office 107

**Date In Location:** 2008-07-16

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. Fareportal, Inc.

**Address:**
Fareportal, Inc.
Suite 1201 213 West 35th Street
New York, NY 10001
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** New York

---

## GOODS AND/OR SERVICES

**International Class:** 039
**Class Status:** Active
Providing links to web sites of others featuring travel; Travel and tour information service; Travel and tour ticket reservation service
**Basis:** 1(a)
**First Use Date:** 2005-10-15
**First Use in Commerce Date:** 2005-10-15

---

## ADDITIONAL INFORMATION

**Color(s) Claimed:** The color(s) grey and red is/are claimed as a feature of the mark.

**Description of Mark:** The mark consists of the letters "cheap" in grey lowercase lettering with a red curved underline, the letter "O" in red capital lettering, the letters "air" in grey lowercase lettering, the letters ".com" in red lowercase lettering, the words "the only way to" in grey lowercase cursive lettering, and the word "go!!" in red lowercase cursive lettering..

**Design Search Code(s):**
**26.17.09** - Bands, curved; Bars, curved; Curved line(s), band(s) or bar(s); Lines, curved
**26.17.13** - Letters or words underlined and/or overlined by one or more strokes or lines; Overlined words or letters; Underlined words or letters

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2008-07-16 - Amendment From Applicant Entered

2008-07-16 - Communication received from applicant

2008-07-15 - PAPER RECEIVED

2008-07-11 - Teas/Email Correspondence Entered

2008-07-10 - Communication received from applicant

2008-07-11 - Assigned To LIE

2008-07-10 - TEAS Response to Office Action Received

2008-06-25 - Notification Of Non-Final Action E-Mailed

2008-06-25 - Non-final action e-mailed

2008-06-25 - Non-Final Action Written

2008-06-21 - Assigned To Examiner

2008-03-20 - Notice Of Design Search Code And Pseudo Mark Mailed

2008-03-19 - New Application Entered In Tram

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
Yuval D. Bar-Kokhba, Esq

**Correspondent**
YUVAL D. BAR-KOKHBA, ESQ
GARBARINI & SCHER, P.C.
432 PARK AVE S
NEW YORK, NY 10016-8013

# EXHIBIT D

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2008-08-15 16:47:17 ET

**Serial Number:** 78740147 Assignment Information          Trademark Document Retrieval

**Registration Number:** (NOT AVAILABLE)

**Mark**

# cheapoair.com

**(words only):** CHEAPOAIR.COM

**Standard Character claim:** Yes

**Current Status:** Abandoned-Failure To Respond Or Late Response

**Date of Status:** 2006-12-11

**Filing Date:** 2005-10-25

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 112

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** M3X -TMO Law Office 112 - Examining Attorney Assigned

**Date In Location:** 2006-12-11

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

---

1. JEN NY

**Address:**
JEN NY
Suite #1201 213 West 35th Street

New York, NY 10001
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** New York
**Phone Number:** 212-391-2313

---

## GOODS AND/OR SERVICES

**International Class:** 039
**Class Status:** Active
Travel services, namely making reservations and bookings for flights, car rentals, vacations, cruises, and tours
**Basis:** 1(a)
**First Use Date:** 2005-07-01
**First Use in Commerce Date:** 2005-07-01

**International Class:** 043
**Class Status:** Active
Travel services, namely making reservations and bookings for hotels
**Basis:** 1(a)
**First Use Date:** 2005-07-01
**First Use in Commerce Date:** 2005-07-01

---

## ADDITIONAL INFORMATION

(NOT AVAILABLE)

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2006-12-11 - Abandonment Notice Mailed - Failure To Respond

2006-12-11 - Abandonment - Failure To Respond Or Late Response

2006-04-30 - Non-final action e-mailed

2006-04-30 - Non-Final Action Written

2006-04-27 - Assigned To Examiner

2005-10-31 - New Application Entered In Tram

## ATTORNEY/CORRESPONDENT INFORMATION

**Correspondent**
JEN NY
213 W 35TH ST RM 1201
NEW YORK, NY 10001-1903
Phone Number: 212-391-2313

| Document Description: **Offc Action Outgoing** |
| Mail / Create Date: **30-Apr-2006** |

Previous Page    Next Page    You are currently on page 1   of 3

| **To:** | JEN NY (victor@cheapoair.com) |
| **Subject:** | TRADEMARK APPLICATION NO. 78740147 - CHEAPOAIR.COM - N/A |
| **Sent:** | 4/30/2006 9:30:38 AM |
| **Sent As:** | ECOM112@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |

## UNITED STATES PATENT AND TRADEMARK OFFICE

**SERIAL NO:**    78/740147

**APPLICANT:**    JEN NY

# *78740147*

**RETURN ADDRESS:**
Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451

**CORRESPONDENT ADDRESS:**
   JEN NY
   213 W 35TH ST RM 1201
   NEW YORK, NY 10001-1903

**MARK:**    CHEAPOAIR.COM

**CORRESPONDENT'S REFERENCE/DOCKET NO:** N/A

**CORRESPONDENT EMAIL ADDRESS:**
   victor@cheapoair.com

Please provide in all correspondence:

1. Filing date, serial number, mark and applicant's name.
2. Date of this Office Action.
3. Examining Attorney's name and Law Office number.
4. Your telephone number and e-mail address.

## OFFICE ACTION

**RESPONSE TIME LIMIT**: TO AVOID ABANDONMENT, THE OFFICE MUST RECEIVE A PROPER RESPONSE TO THIS OFFICE ACTION WITHIN 6 MONTHS OF THE MAILING OR E-MAILING DATE.

**MAILING/E-MAILING DATE INFORMATION**: If the mailing or e-mailing date of this Office action does not appear above, this information can be obtained by visiting the USPTO website at http://tarr.uspto.gov/, inserting the application serial number, and viewing the prosecution history for the mailing date of the most recently issued Office communication.

Serial Number 78/740147

The assigned examining attorney has reviewed the referenced application and determined the following.

STATUTORY REFUSAL(S)

The examining attorney refuses registration under Trademark Act Section 2(d), 15 U.S.C. §1052(d), because the applicant's mark, when used on or in connection with the identified goods/services, so resembles the mark in U.S. Registration No. **2890981** as to be likely to cause confusion, to cause mistake, or to deceive. TMEP §§1207.01 *et seq*. See the enclosed registration.

The examining attorney must analyze each case in two steps to determine whether there is a likelihood of confusion. First, the examining attorney must look at the marks themselves for similarities in appearance, sound, connotation and commercial impression. *In re E. I. DuPont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973). Second, the examining attorney must compare the goods or services to determine if they are related or if the activities surrounding their marketing are such that confusion as to origin is likely. *In re August Storck KG*, 218 USPQ 823 (TTAB 1983); *In re International Telephone and Telegraph Corp.*, 197 USPQ 910 (TTAB 1978); *Guardian Products Co., v. Scott Paper Co.*, 200 USPQ 738 (TTAB 1978). TMEP §§1207.01 *et seq*.

The goods/services of the parties need not be identical or directly competitive to find a likelihood of confusion. They need only be related in some manner, or the conditions surrounding their marketing be such, that they could be encountered by the same purchasers under circumstances that could give rise to the mistaken belief that the goods/services come from a common source. *In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984); *In re Corning Glass Works*, 229 USPQ 65 (TTAB 1985); *In re Rexel Inc.*, 223 USPQ 830 (TTAB 1984); *Guardian Products Co., Inc. v. Scott Paper Co.*, 200 USPQ 738 (TTAB 1978); *In re International Telephone & Telegraph Corp.*, 197 USPQ 910 (TTAB 1978). TMEP §1207.01(a)(i).

CHEAPAIR INC. is previously registered for "Travel agency services, namely making reservations and bookings for airplane transportation, car rentals and arranging cruises." The applicant seeks the exclusive right to use CHEAPOAIR.COM, a mark which is nearly identical to CHEAPAIR. The marks are clearly designed and intended to create the same commercial impression, meaning and connotation in the minds of potential purchasers for and end users of the identified services. Specifically, both marks create the impression of "air" as in "airfare" and the like which is "cheap" or very inexpensive. Consumers will undoubtedly recognize and call for the services of both parties by the same wording, and are at least likely to be confused, therefore, with respect to the source of or origin of the services they seek.

The mark is registered for the same services for which the applicant seeks registration. Both parties offer travel services and offer bookings for the same types of travel. The services of both parties are likely to be advertised through the same media and offered through the same channels of trade. Thus, the same consumers and consumer groups are likely to encounter the services of both parties, and consumer confusion regarding the source of the services encountered is highly likely. In this case, both the marks and the services are either identical or very similar, Thus, the Office must refuse registration pursuant to Trademark Act Section 2(d).

Finally, the examining attorney must resolve any doubt as to the issue of likelihood of confusion in favor of the REGISTRANT and against the applicant who has a legal duty to select a mark which is totally dissimilar to trademarks already being used. *Burroughs Wellcome Co. v. Warner–Lambert Co.*,

203 USPQ 191 (TTAB 1979).

Although the examining attorney has refused registration, the applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

If the applicant chooses to respond to the refusal to register, the applicant must also respond to the following.

GOODS/SERVICES/CLASSIFICATION/FEES  -  INTERNATIONAL CLASS 39 ONLY

The recitation of services is unacceptable as indefinite because "vacations" is indefinite and could include or reference services outside of International Class 39.  The applicant may adopt the following Class 39 recitation, if accurate:  Travel services, namely making reservations and bookings for flights, car rentals, cruises, and tours..  TMEP §1402.11.

Please note that, while an application may be amended to clarify or limit the identification, additions to the identification are not permitted. 37 C.F.R. §2.71(a); TMEP §1402.06.  Therefore, the applicant may not amend to include any goods or services that are not within the scope of the goods and services recited in the present identification.

> /JMBK/
> Jennifer M.B. Krisp
> Attorney, Law Office 112
> 571-272-9183 [leave message]

**HOW TO RESPOND TO THIS OFFICE ACTION:**
- ONLINE RESPONSE:  You may respond using the Office's Trademark Electronic Application System (TEAS) Response to Office action form available on our website at http://www.uspto.gov/teas/index.html.  If the Office action issued via e-mail, you must wait 72 hours after receipt of the Office action to respond via TEAS.  **NOTE:  Do not respond by e-mail.  THE USPTO WILL NOT ACCEPT AN E-MAILED RESPONSE.**
- REGULAR MAIL RESPONSE:  To respond by regular mail, your response should be sent to the mailing return address above, and include the serial number, law office number, and examining attorney's name.  **NOTE:  The filing date of the response will be the *date of receipt in the Office,*** not the postmarked date.  To ensure your response is timely, use a certificate of mailing.  37 C.F.R. §2.197.

**STATUS OF APPLICATION:** To check the status of your application, visit the Office's Trademark Applications and Registrations Retrieval (TARR) system at http://tarr.uspto.gov.

**VIEW APPLICATION DOCUMENTS ONLINE:** Documents in the electronic file for pending applications can be viewed and downloaded online at http://portal.uspto.gov/external/portal/tow.

**GENERAL TRADEMARK INFORMATION:** For general information about trademarks, please visit the Office's website at http://www.uspto.gov/main/trademarks.htm

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINING ATTORNEY SPECIFIED ABOVE.**

TDR Home

This document may be displayed as a PDF file containing images without text. You may view online or save the entire document by clicking on the file download icon in the upper right corner of this page. [required PDF viewer]
FAQ: Are you seeing only the first page of this PDF document?

*If you need help:*

- **General trademark information**: Please e-mail TrademarkAssistanceCenter@uspto.gov, or telephone either 571-272-9250 or 1-800-786-9199.
- **Technical help**: For instructions on how to use TDR, or help in resolving **technical** glitches, please e-mail TDR@uspto.gov. If outside of the normal business hours of the USPTO, please e-mail Electronic Business Support, or call 1-800-786-9199.
- **Questions about USPTO programs**: Please e-mail USPTO Contact Center (UCC).

**NOTE**: Within any e-mail, please include your telephone number so we can talk to you directly, if necessary. Also, include the relevant serial number or registration number, if existing.


 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Aug 13 04:11:24 EDT 2008*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | CHEAPAIR INC. |
| **Goods and Services** | IC 039. US 100 105. G & S: Travel agency services, namely making reservations and bookings for airplane transportation, car rentals and arranging cruises. FIRST USE: 19940201. FIRST USE IN COMMERCE: 19940201 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 76537322 |
| **Filing Date** | August 14, 2003 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | July 13, 2004 |
| **Registration Number** | 2890981 |
| **Registration Date** | October 5, 2004 |
| **Owner** | (REGISTRANT) American Travel Solutions, Inc. CORPORATION CALIFORNIA 16055 Ventura Blvd. #405 Encino CALIFORNIA 91436 |
| **Attorney of Record** | Mark V.B. Partridge |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE INC. APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

# EXHIBIT E



Pissed Consumer
*I'm Pissed*

Submit complaint | Consumer Tips | About Us

Username
Password
login
Remember Me
Lost Password?
No account yet? Register



Bookmark Us

Post a Complaint

**CheapOair.com**
CheapOair is a Airline Wholesaler Save 85% on Next Trip, All Airlines
www.CheapOair.com

**Discount Airline Tickets**
Compare Rates From All Major Travel Sites - Fast & Easy Ticket Search
BookingBuddy.com

**Bargain Flight Deals**
Super cheap tickets - lowest fares! Search all major sites in one place
www.smartertravel.com

Ads by Google

search

Home » Company Reviews » Cheapoair

## Cheapoair

Cheapoair.com is a website that brings airfares, hotels, car rentals and vacationa packages information from numerous sources. The company offers a huge selection of cheap plane tickets, airline tickets and cheapest airfares. With the help of Cheapoair it is very easy to book the tickets online and to plan a vacation. Cheapoair provides business class fares, first class fares, a number of different top deals, weekend getaways, seasonal airline tickets, tickets for international flights, for Europe flights, Caribbean flights, Mexico flights, domestic flights, Canada flights, and so much more.

In addition, Cheapoair offers different travel resources, travel tips, it provides airline codes, news, travel glossary and many other things available on Cheapoair.com.

**Consumer Rating: 29 Review Points**

Best Consumer Reports:
- Cheapoair.com reviews - TRAVEL
- Cheapo air misleading website
- CheapOair is the worst, stay aw ay from them
- CheapOair is horrible.
- Cheapo air agent failed to make promised cancellation, I'm stuck !

Home
Add a complaint
Latest Reviews
Consumer Reports
Company Reviews
Consumer Forum
Consumer Advocacy
Sample Complaint Letter
Affiliates

Ads by Google

**Student Cheap Air Tickets**
Book One Way Or Round Trips At Cheap Rates For Students. Book Now!
www.StudentUniverse.com

**Merced Airfare Deals**
Seven tips to find the best fares. Search all major sites in one place
www.smartertravel.com

**Greek for travelers**
Airfare and Hotels for Less Get Multiple Quotes!
compare LowFares.com

**Flagstaff Airline Tickets**
Compare Over 130+ Top Travel Sites For The Lowest Fares - Fast & Easy!
www.BookingBuddy.com

**Expedia.com Official Site**
Call 1-800-EXPEDIA Today For Great Rates Plus Expert Advice.
www.Expedia.com

| Date | Cheapoair Reviews | Hits |
|---|---|---|
| 08/08 | Cheapoair changed more than requested | 63 |
| 08/05 | Cheap O Air | 78 |
| 07/24 | Don't use cheapo air!!! | 222 |
| 07/23 | Overcharged and did not refund or respond | 102 |
| 07/20 | cheapoair.com has the worst customer service in town and will not backup travel that are booked. | 86 |
| 07/06 | CheapOair have the WORST consumer support and policies | 137 |
| 07/02 | Great experience with Cheapoair.com | 212 |
| 06/30 | discount handled no problem | 110 |
| 06/20 | 8 Months still not refund | 260 |
| 06/20 | CheapOair is very sorry; yes they are! | 277 |
| 06/12 | Cheapoair charges an enormous amount of fee | 363 |
| 06/04 | it will take more than ten words | 234 |
| 05/23 | Cheapoair Takes Forever to Complete a Refund | 145 |
| 05/21 | Cheap O Air-AWFUL | 591 |
| 05/18 | Class action lawsuit on CheapOair.com | 658 |
| 05/02 | Cheapoair sold non-existing flights | 454 |
| 04/24 | CHEAPOAIR WILL COST YOU | 391 |
| 04/23 | Trying to book a flight with CheapO | 467 |
| 04/19 | Cheapo Air- Nothing short of Fraud! | 520 |
| 02/01 | Cheapo air misleading website | 2118 |
| 01/30 | Cheapo Air agent failed to make promised cancellation, I'm stuck ! | 710 |
| 01/06 | | 903 |



**Recently Discussed**
- Target — Target.com misleading advertisement
- Hartz — Avoid hartz flea treatments, hartz flea products Informative - Hartz
- Fedex — Terrible customer service FedEx International
- Target — Target gift receipt gets return price that is currently showing.
- Yoursavingsclub — Unauthorized charge
- Unishippers — Unishippers complaint
- Lenscrafters — Lenscrafters - Bad Glasses



AUCTIONS
AUTO
COMPUTER
CONS
CONSUMER
DELIVERY
EDUCATION
FINANCE
FOOD
GOVERNMENT
HEALTH
OTHER
SERVICE
TRAVEL

- Girls Gone Wild
- Watchersweb
- iPostNaked
- Allied Interstate
- PrivacyMatters
- Primerica
- Expedia
- Iberostar
- Tiran Zaken
- Raymore and Flanigan

Cheapoair @ Pissed Consumer

**Hot Topics**

Warnt   Sears Delivery   Cheapoair Preview   Girls Gone Wild
Free   Bren Wars   Empire Carpet   Home Warranty Reviews
Vol. Travel Club   Hair Cutlery   Octagonal Complaints
Mentevox Products   Eta Reporting   Bernex Mapol   Time Plus
Varicore   Life Alert   Dean Graziosi
Ameriwratch   CI England   Ooncear Valley Association
Iwarscler Jamaica   Corbor Reviews   Woel Teammanking   Tri
Propulse   Aurora Loan Services Llc   Nuwave Oven   Option
One Mongage   Warner Enterprises   Metabolor   Old Oil
Dressdoilies Creaminghouse   Baja Motorsports Go Karts   Waho
Durmdales   Consumer Complaints   Runaskeyway Court
TrackAdjust   Hewolth Window Complaints   Baja Motorsports
Stunt   Reviews Of Kymanis

CheapoAir is the worst, stay away from them

| | |
|---|---|
| 10/30 Cheapoair Customer Service | 379 |
| 10/22 Renee Cheapoair Customer Service | 300 |
| 09/11 AVOID CHEAPOAIR | 557 |
| 09/01 CheapOair is horrible. | 796 |
| 08/23 Cheapoair.com Reviews | 525 |
| 07/26 Cheapoair.com reviews - TRAVEL | 3039 |
| 07/26 Cheapoair.com, Arijit opinion - Travel Agents | 479 |

<< Start < Prev 1 Next > End >>

Results 1 - 29 of 29

**Airlines**

Consumer Airline reviews about reservations, flight schedules, ticket specials, travel planning, membership, and airline industry news. Share your airline experience with other consumers.

- cheapoair.com  *( 7 items )*
- CheapTickets  *( 6 items )*
- Mexicana Airlines  *( 6 items )*
- Monaco Coach Corporation  *( 5 items )*
- JetBlue Airways  *( 4 items )*
- Worry Free Vacations  *( 4 items )*
- Consumer Wholesale Travel  *( 4 items )*
- Frontier Airlines  *( 3 items )*
- Singapore Airlines  *( 3 items )*
- Emirates Airlines  *( 3 items )*
- Air Jamaica  *( 3 items )*
- Amex  *( 2 items )*
- Ryan Air  *( 2 items )*
- Expedia.com  *( 2 items )*
- Jack Pujji - Lowest Airfare Finder  *( 2 items )*

Blog  |  Contact Us  |  Search  |  News Foods  |  Consumer Jokes  |  Government Resources  |  Privacy Policy

Copyright © 2008 PissedConsumer.com

**Our Friends**

**Consumer Reports** is the most famous consumer product reviews and rating agency.

This Consumer Blog offers alternative look at **Consumer Product Reviews**

**Complaints:** Learn how to write proper complaint letters that get the results

**Featured Complaints**

Kayak Pool
Toyota Of Goldsboro
Linens N Things
Beseda Flooring
U Store It
Wells Fargo Financial
Silver Auctions
Junior Gym
Knights Automotive
Walmart
Credit Solutions
Direct Tv
Wells Fargo

# EXHIBIT F

Case 1:08-cv-05384-DLC   Document 20   Filed 08/15/2008   Page 64 of 65




close
window

# SubDomain - The Third Level Domain

Published: Friday, March 12, 2004

**What is a subdomain?**

A subdomain is the part of the website address before the domain name. For example, the address for WebsiteGear forum is **http://forum.websitegear.com**. Here, forum is a subdomain of the domain name websitegear.com. Subdomains are also known as the third level domains or canonical names. A subdomain, unlike a domain name, is not registered anywhere because it is associated with a domain name only. It can be created by the web host on the DNS server. The most commonly used subdomain is **www**, as in http://www.websitegear.com. However, there is no need to add www in front of the domain name. Similarly, mail server addresses often have mail as the subdomain, as in **mail.websitegear.com**.

**Why are subdomains used?**

Subdomains are commonly used to categorize portions of the website. For example, the services offered by WebsiteGear are categorized by their subdomains, such as poll.websitegear.com or rating.websitegear.com. The benefit is that the subdomain can be easily moved to another server if the category gets very popular.

Subdomains are also used by free webhosting providers to resell web space under their own domain name (e.g. **http://membername.hostname.com**). Each member will have their subdomain, however, they all will still share the domain name of the hosting provider.

The third reason for using a subdomain name is to load balance the web servers for a high traffic website. Multiple web servers are assigned different subdomains like www.sitename.com, www1.sitename.com, www2.sitename.com etc, though each of them contain the same application code. When the request comes from the browser, the load balancing software redirects it to one of these servers. DNS load balancing is a simple method of load balancing using subdomains pointing to different IP addresses.

**Types of subdomain setup**

Subdomain can be setup in different ways, although the subdomain information is stored similarly in the DNS server.

1. **Separate Site:** This type of subdomain setup will the have a separate hosting account or hosting location with respect to the domain hosting account. The hosting provider usually assigns new resources (disk space, bandwidth etc.) for this subdomain and charges fees as if it is another hosting account. There is often no way to share common files (such as include files by relative path) between the

Case 1:08-cv-05984-DLC   Document 20   Filed 08/15/2008   Page 65 of 65

domain account and subdomain account.

2. **Sub-Directory Pointing:** In this case, the subdomain is pointed to a sub-directory of the web root folder. For example, subdomain.domain.ext will point to /account/www/subdomain directory. Essentially, the resources of the domain in this case are shared by the subdomain as well. Usually the hosting provider does not charge additional fees (other than subdomain setup fees). Both the domain and subdomain can also reuse the same common files (such as SSI includes) from the same shared directory location.

3. **Separate Server:** This type of configuration is similar to the separate site configuration but hosted on a separate server with a different IP address. In this case the subdomain can reside at a totally different geographical location. The advantage of having a separate server for a subdomain is in load distribution among servers (by separating application functionality) or providing horizontal scaling in case of load balancing between servers (by identical replication of application code on each server).

## More On Sub-Domains

More detailed discussions on subdomains and cookie handling within subdomains is provided in the next section. Click here.



Tips On Using SubDomain

Copyright © 2003-2008 WebsiteGear Inc. All rights reserved.

About | Advertise | Submit Content | Privacy | Agreement | Contact